**TEXON DRILLING CO. et al. v.
ELLIFF et al.**

No. 11681.

Court of Civil Appeals of Texas.
San Antonio.

June 4, 1947.

Rehearing Denied July 9, 1947.

Tarlton, Koch & Hale, McCampbell, Wood & Kirkham, and Ralph R. Wood, all of Corpus Christi, for appellants.

Kemp, Lewright, Dyer, Wilson & Sorrell and Boone & Davis, all of Corpus Christi, for appellees.

NORVELL, Justice.

Texon Drilling Company, a Texas corporation, Texon Royalty Company, a Texas corporation, Texon Royalty Company, a Delaware corporation, and John L. Sullivan have appealed from a judgment rendered against them and in favor of Mabel Elliff, a feme sole, Frank Elliff and Charles Elliff, the plaintiffs below. The judgment was rendered upon a special issue verdict and the amount thereof is $154,518.19.

Appellees' claim for damages was based upon the "blowout" of a gas well which was being drilled upon property owned by Mrs. Clara Driscoll and adjoining the appellees' lands. The greater part of the judgment ($148,548.19) was awarded for the loss of

gas and distillate which prior to the blow-out lay underneath the appellees' property.

By its special issues Nos. 14 and 15, the trial court required the jury to estimate the amount of gas and distillate which had been drained from the Elliff property as a result of the blowout. The monetary damage was arrived at by multiplying this amount by the Elliff fractional interest of the mineral estate and by 2c per thousand cubic feet for gas and by $1.25 per barrel for distillate.

The controlling question upon this appeal is whether or not a recovery based upon the theory and formula above stated can be sustained in law under the pleadings and facts disclosed by the record.

Appellees are the owners of the surface estate in and to a certain tract of land situated in the Aqua Dulce Gas Field of Nueces County, Texas, containing approximately 3054.9 acres of land. They also were the owners of an undivided one-half interest in and to the mineral estate underlying the East 1554.9 acres of the tract and all of the mineral estate underlying the West 1500 acres of the tract. Both tracts were subject to oil and gas leases so that the royalty interest of the Elliffs is a one-sixteenth on the East 1554.9 acres and a one-eighth on the West 1500 acres.

In November, 1936, there was a producing well (Elliff No. 1) located on the Elliff property. The appellants were engaged in drilling a diagonal offset to the Elliff well upon the Driscoll property (Driscoll-Sevier No. 2). The Driscoll-Sevier well was approximately 1000 feet Northeast of the Elliff well and 466 feet distant from the Elliff east property line.

On November 19, 1936, while drilling at a depth of approximately 6,838 feet, appellants lost control of Driscoll-Sevier No. 2, and the well "blew out," caught fire and cratered. Attempts to control the well were unsuccessful. Enormous amounts of gas, distillate and some oil were blown into the air. The cratering process continued until Elliff No. 1 was engulfed and destroyed.

The jury found that appellants were negligent in failing to use drilling mud of sufficient weight in the drilling of Driscoll-Sevier No. 2, and that this failure was the proximate cause of the blowout.

The jury found that appellees had sustained the following damages: $4,620 damage to sixty acres of the surface; $1350 for the loss of 27 head of cattle; $78,580.46 "for such gas (distinct from distillate) as was lost from and under the lands" of appellees (Special Issue No. 14); and $69,-967.73 for distillate "lost from and under" the lands of appellees (Special Issue No. 15).

As to gas, the court instructed the jury to figure the value thereof at 2c per M., and allow appellees a recovery for one-eighth of the gas lost from and under the West 1500 acres of the 3054.9 acre tract, and a recovery of one-sixteenth of the gas lost from and under the East 1554.9 acres of the tract.

A similar instruction was given as to distillate, "figured at $1.25 per barrel."

The damage issues were conditioned upon the jury's findings relating to the prior issues of negligence and proximate cause.

Appellees' pleaded theory of recovery was that there existed beneath the Elliff and adjoining lands a "huge reservoir of oil, gas, distillate and other oil, gas and mineral substances, the exact area and extent of which is reasonably certain of ascertainment and is definitely known"; that approximately fifty per cent of said reservoir lay beneath appellees' lands; and that a part of said reservoir underlay lands owned by Mrs. Clara Driscoll, formerly known as Mrs. Clara Driscoll Sevier. That as a result of negligent drilling operations upon the Driscoll property, the blowout occurred and large amounts of gas and distillate was drained, spent and wasted from the common reservoir and from the part thereof underlying appellees' tract of land.

The jury's findings as to the amount of drainage of gas and distillate underlying the Elliff lands is primarily based upon the testimony of the witness C. J. Jennings, appellees' petroleum expert. The Aqua Dulce field is a developed high pressure gas field. Through information derived from the drilling records and electric logs of various wells in the field, Jennings was able to estimate the amount of gas and distillate lost from under the Elliff lands as a result of the Driscoll-Sevier blowout. Jennings testified that in his opinion eleven different sands

had been affected. On six separate sands he had definite information as to porosity and bottom-hole pressures, both before and after the blowout. He was able to estimate the amount of gas lost from under the Elliff tract by calculating the volume of the various strata of sands and the voids therein which were occupied by gas. He then applied Charles Law for temperature and a variation of Boyles Law for pressure in arriving at his final estimates of quantity. According to Jennings, the high gas pressure of the field resulted in what he called super compressibility of gas which would make necessary a correction of calculation in applying Boyle's law. This correction he did not make, as he estimated it would be offset or compensated by the presence of connate water in the voids of the sand along with the gas, and by certain quantities of gas which had escaped or been released from the reservoir from causes other than the blowout well. Under Jennings' method of calculation, it is apparent that the chief determining factor of the estimate was the decrease in bottom hole pressures of the sands caused and brought about by the blowout. Jennings estimated that 13,096,717,000 cubic feet of gas had been drained from the West 1500 acres of the Elliff tract, and that 57,625,728,000 cubic feet had been drained from the East 1554.9 acres of the tract as a result of the blowout. The loss in money to the Elliffs was calculated on the basis of their ownership of the mineral estate in the two tracts—one-sixteenth on the East and one-eighth on the West. The value of the gas was figured by Jennings at the rate of 2c per M. This figure was accepted by the court and submitted to the jury as established as a matter of law, and no objections were made to said instruction. It is not clear from Jennings' testimony whether the value of 2c per M. is the value of the gas at the mouth of a well, at the pipe line or in place in the ground. During the taking of the testimony some contention was made that the value, 2c per M., was the value of the gas in place. The pleading is that "said gas has at all times had a reasonable market value, in Nueces County, Texas, of the sum of two cents (2c) per thousand cubic feet."

The distillate loss was calculated by taking the gas distillate ratio as shown by the Railroad Commission records on six of the sands involved upon which records were available. For a sand involved concerning which there were no gas-distillate records, Jennings used the average of the sand tested above it and below it. His estimate was the 195,713 barrels had been drained from the West 1500 acres of the Elliff tract and 802,690 barrels from the East 1554.9 acres of the tract as a result of the blowout. The Elliff loss was figured on their royalty basis at $1.25 a barrel which Jennings stated was "about the cheapest price I ever heard of its being sold at."

While it is probable that a considerable amount of oil as distinguished from distillate escaped from the Elliff premises as a result of the blowout, no recovery for oil was allowed owing to the practical impossibility of measuring the same. According to witnesses, black smoke was emitted from the crater at times indicating that oil was burning, but the quantity thereof could not be ascertained.

From the above, we think it clear that the trial court has awarded damages for drainage as such. Gas and distillate in underground reservoirs was considered in much the same way as if it had been produced and stored in surface tanks and then wrongfully taken, converted or destroyed by appellants. Its value was measured by the units and standards generally applicable to gas and distillate after it has been taken from the earth and placed upon the commercial market.

■ It is our opinion that appellants' theory of recovery or measure of recovery is not supported by Texas law.

The specific error committed by the trial court was in submitting issues Nos. 14 and 15 to the jury over appellants' objections and basing a judgment thereon.

Among other objections to said issues, appellants asserted that as the evidence showed that all of the gas and distillate drained from under appellees' lands had migrated from said lands and was lost through the blowout well located upon property not owned by them, appellees could not recover therefor under applicable laws relating to property in mineral estates, particularly the law of capture.

Appellants also objected to said issues as submitting an improper measure of damages in that appellees' claim "is for trespass in and to a freehold estate in land and the proper measure of damage is the reasonable cash market value before and after the occurrence complained of."

These two objections raise questions which are not identical, but go to the very nature of the appellees' action. Is it an action for gas and distillate wrongfully taken from appellees, or is it an action for damages to real property?

Appellants seemingly regard the action as one for gas and distillate wrongfully taken and devote a considerable portion of their brief to the proposition that an award based thereon can not be sustained under the law of capture.

Conceding for the moment that appellants' analysis of the nature of the action is correct, the validity of their asserted proposition necessarily follows.

The evidence shows that by far the greater part of the gas and distillate drained from under the Elliff property was lost through the blowout well located upon the Driscoll property, although a comparatively small portion thereof was emitted from the Elliff surface through a water well located thereon and through a portion of the blowout crater which eventually became so large as to include part of the Elliff lands.

In Brown v. Humble Oil and Refining Co., 126 Tex. 296, loc. cit. 305, 83 S.W.2d 935, loc. cit. 940, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393, the Supreme Court said:

"The rule in Texas recognizes the ownership of oil and gas in place, and gives to the lessee a determinable fee therein. Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989.

"Owing to the peculiar characteristics of oil and gas, the foregoing rule of ownership of oil and gas in place should be considered in connection with the law of capture. This rule gives the right to produce all of the oil and gas that will flow out of the well on one's land; and this is a property right.

And it is limited only by the physical possibility of the adjoining landowner diminishing the oil and gas under one's land by the exercise of the same right of capture. The following decisions discuss the law of capture as applied in this state: Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Houston & T. C. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St. Rep. 620, 4 Ann.Cas. 827; Prairie Oil & Gas Co. v. State (Tex.Com.App.) 231 S.W. 1088, 1089."

█ While the property rights relating to oil, gas and mineral estates are subject to regulation under the police power of State, the owners of lands embracing a common reservoir of oil and gas are not co-owners of said reservoir, but each owns in severalty the oil and gas in place within that portion of the reservoir underlying or contained by his lands. While the "common reservoir" may be made the basis of administrative regulation designed to secure proximate equality of opportunity among owners, the fundamental rules of property remain unchanged. Brown v. Humble Oil and Refining Company, supra; Magnolia Petroleum Co. v. Zeppa, Tex.Civ.App., 70 S.W.2d 777; Canadian River Gas Co. v. Terrell, D.C., 4 Fed.Supp. 222.

█ Under the "law of capture" as recognized in this State, when oil or gas migrates from one tract of land to another of different ownership, the property rights of the first owner in and to said oil and gas are terminated. He is no longer the owner thereof, and can not recover damages upon the theory that his oil or gas was taken or converted by the adjoining landowner.

As we understand appellees' position from a study of their brief, it is that their action is essentially one of an action for damages to real property and not an action for oil and gas wrongfully taken and converted. The action is described as being "in the nature of a suit in tort for wrongful violation of appellees' property rights" and as being "in the nature of a tort action for damages proximately caused by the wrongful acts of appellants." Appellees' paramount property right was the ownership of a certain undivided portion of the oil and

gas in place within a specific tract of land. Seemingly, it is this right which they say has been violated by appellants. Appellees cite and rely upon Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co., Tex.Com. App., 298 S.W. 554, a trespass case in which the question of legal liability for negligent operations on one tract of land resulting in the destruction of a well and the appurtenant mineral estate of another tract of land was involved.

■ If the nature of the action be one for damages to real property, then it follows that the damage issues submitted by the trial court were evidentiary and not controlling issues. This constitutes reversible error in view of the fact that the proper measure of damages was suggested by an objection to the charge, and it can not be said that by acquiescence, waiver or agreement, the parties consented to the determination of the amount of damages upon the jury's answers to issues which were evidentiary only.

■■ Since a surface estate in land is real property and a mineral estate in land is likewise real property, there seems to be no logical or compelling reason why the monetary loss occasioned by the injury or destruction of said estates should be determined by different standards. In our opinion the rule that where land is permanently injured, the usual measure of damages is the depreciation in value occasioned by the wrongful act, is applicable to mineral estates. 24 Am.Jur. 642, § 160. This seemingly was the rule applied in Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., Tex. Com.App., 298 S.W. 554, in which damages were sustained for the destruction of a producing well and the destruction of a source of oil supply. (See also, 4 Summers, Oil and Gas § 654, as to liability; § 658, damage to surface. In our opinion, the same rule is applicable to mineral estates.)

We are further of the opinion that Peterson v. Grayce Oil Company, Tex.Civ.App., 37 S.W.2d 367, affirmed 128 Tex. 550, 98 S.W.2d 781, does not support appellees' contention that they are entitled to recover or have their recovery measured by the gas and distillate drained from their property as a result of the blowout. From what has been said, it is apparent that appellees sought to measure their monetary recovery by the portion of the gas and distillate that escaped from the common reservoir, which had theretofore underlain their tract of land. It was based upon or measured by the entire mineral estate owned by the Elliffs.

During the trial, appellees abandoned their claim for damages resulting from the destruction of Elliff No. 1.

In Peterson v. Grayce Oil Company a judgment in favor of Grayce Oil Company et al., was rendered by the trial court. This judgment was reversed by the Court of Civil Appeals and the cause remanded for another trial. The judgment of the Court of Civil Appeals was affirmed by the Supreme Court. It will be seen that neither the Court of Civil Appeals nor the Supreme Court sustained a money judgment in favor of plaintiffs upon any particular theory.

It appears from the opinion of the Court of Civil Appeals that plaintiffs sought damages for the illegal use of a vacuum pump by the defendants. Plaintiffs claimed decreased production upon their lease and permanent injury to their leasehold estate.

The jury found that the decrease in production on the Grayce-Cottom lease, owned by plaintiffs, caused by the operation of a vacuum pump on the McCarty lease, owned by defendants, was 726 barrels. The jury further found that the operation of a vacuum pump upon the McCarty lease proximately caused a decrease of $10,320.00 in the cash market value of the Grayce-Cottom lease. The loss of production item, as we understand it, was measured by the difference between the rate of production on the Grayce-Cottom lease before the vacuum pump was placed in operation and the rate of production on said lease during the time the vacuum pump was being used. It was clearly an item of special damage covering the period of time within which the pump was being illegally used. The case is not authority for the proposition that permanent injury to an oil and gas leasehold estate can be measured alone by the quantity of oil or gas drained therefrom by negligent drilling operations carried on upon an adjoining lease.

By reason of the error above pointed out, the judgment of the trial court will be re-

558

versed and the cause remanded to the district court for new trial:

Other matters urged as error in appellants' brief need not occur upon a retrial of the case and for that reason we pretermit further discussion.

Reversed and remanded.