'TEXON DRILLING CO. et al. v.
ELLIFF et al.
No. 11681.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 20, 1948.

Rehearing Denied Nov. 17, 1948.

Tarlton, Ogden & Hale, McCampbell, Wood & Kirkham, and Ralph R. Wood, all of Corpus Christi, for appellants.

Kemp, Lewright, Dyer & Sorrell, Boone, Boone & Davis, and J. M. Wilson, all of Corpus Christi, for appellees.

NORVELL, Justice.

The Supreme Court reversed our judgment in this cause and remanded the case to this Court. Elliff v. Texon Drilling Company, 210 S.W.2d 558, 563.

The final paragraph of the Supreme Court opinion, containing its instructions to this Court, reads as follows:

"We are therefore of the opinion the Court of Civil Appeals erred in holding that under the law of capture the petitioners cannot recover for the damages resulting from the wrongful drainage of the gas and distillate from beneath their lands. However, we cannot affirm the judgment of the trial court because there is an assignment of error in the Court of Civil Appeals challenging the sufficiency of the evidence to support the findings of the jury on the amount of the damages, and another charging that the verdict was excessive. We have no jurisdiction of those assignments, and, since they have not been passed upon, the judgment of the Court of Civil Appeals is reversed and the cause remanded to that court for consideration of all assignments except those herein decided."

The case has been again argued and resubmitted. The parties have filed supplemental briefs, and that of appellants contains two additional points.

The parties disagree as to the effect and extent of the Supreme Court's holdings as well as to our authority to consider the additional points contained in the supplemental brief.

To some extent, therefore, it becomes necessary for us to state our conclusions as to the Supreme Court's holdings. In order to avoid a confusion of terms in this discussion, it is well to point out that the Supreme Court in its opinion obviously used the term "assignment" in its broad sense, as encompassing the "point," Rule 418, Texas Rules of Civil Procedure, rather than in the restricted or technical sense employed in the Rules of Civil Procedure. In this opinion we will adhere to the nomenclature used in the Rules of Civil Procedure and employ the term "assignment" as meaning a ground set forth in a motion for new trial. Rules 324 and 374, R.C.P.

Appellants' original brief filed in this Court contained twelve points.

The first three points attack the theory of recovery upon which the judg-

ment of the trial court was based. This theory was that appellants had taken or destroyed gas and distillate which belonged to appellees. This Court held that as the gas and distillate (or the greater part thereof) had passed from under appellees' tracts of land prior to the time it was destroyed or lost appellees had no title or interest therein at the time of its destruction. We held that appellees must recover, if at all, as and for damages to real property. We further stated what, in our opinion, was the applicable measure of damages for an injury to real property. See Texon Drilling Co. v. Elliff, Tex.Civ.App., 210 S.W.2d 553. The Supreme Court held that the appellants' actions resulted in waste and a wrongful dissipation of the gas and distillate, and that appellees did not lose title thereto by reason of migration outside the Elliff property lines. The Supreme Court said:

"In like manner, the negligent waste and destruction of petitioners' gas and distillate was neither a legitimate drainage of the minerals from beneath their lands nor a lawful or reasonable appropriation of them. Consequently the petitioners did not lose their right, title and interest in them under the law of capture. At the time of their removal they belonged to petitioners, and their wrongful dissipation deprived these owners of the right and opportunity to produce them." 210 S.W.2d 563.

We are not in agreement with appellants' contention that all the Supreme Court decided was that "the 'law of capture' did not absolve the defendants from 'any' liability," and left all other questions open for our determination. This Court did not hold that appellants were absolved from any and all liability, but did hold that appellees' proper remedy was an action for injury to real property and remanded the case for trial upon that theory. The Supreme Court reversed this Court and held that an action would lie for the taking or destruction of gas and distillate belonging to appellees. Under the Supreme Court's opinion, appellants' first, second and third points must be considered as overruled.

Appellants' fourth to tenth points, inclusive relate to matters over which this Court does not have final jurisdiction. The sus-

taining of any of these points would have resulted in a reversal of the judgment and a remand of the case which was the order made by us upon the original submission of this appeal, 210 S.W.2d 557, 558. Said points will be briefly noticed.

By their fourth, fifth and sixth points appellants contend that this cause should be reversed because of improper remarks made in appellees' closing argument to the jury.

By means of bills of exception, the argument of appellants' counsel and the closing argument for appellees are made a part of the record. The statement of facts is voluminous and large parts of the briefs are devoted to a discussion of these arguments in the light of the evidence. Appellants' chief complaint, presented by the fourth point, is that appellees sought a favorable verdict by contrasting the wealth of the appellants and the poverty of appellees. Appellees contend that their arguments were justified under the evidence in the light of the argument made by the opposing attorney. The evidence indicated that appellants had large royalty and leasehold interests in the area which had been affected by the blowout. Upon this basis, appellants argued that as they stood to lose much more than did appellees in case of an improper handling of a well, they were not likely to be careless or negligent in their drilling operations. However proper this argument may have been, it did call attention to the fact that appellants' oil and gas interests in the field were greater than those of appellees. Appellants further argued that the development of the Agua Dulce Field was of great benefit to the county and locality and that those who had risked their money in promoting and developing the field should not be mulched in damages. Appellees did not use a Nueces County driller as a witness, and this fact was commented upon by appellants' counsel. After one of appellants' witnesses had testified, the manager of the company that employed said witness was called to the stand. This manager, in the course of his examination, stated that the job of appellants' witness was "hanging by a thread" because he had testified without first consulting the management of the employer company. Upon

these facts and partially to explain appellees' failure to produce Nueces County operators as witnesses, appellees' counsel charged that appellants, by their association with and influence upon other drillers in the area, made it necessary for appellees to obtain out of county witnesses. The jury speeches for the opposing parties were delivered by able and experienced counsel on both sides. These arguments were vigorous and forceful and not free from appeals to emotion.

Within certain limits counsel may determine the plane upon which a case is presented to a jury and they should not be unduly restricted in replying to opposing arguments addressed to the reasoning faculties or to the emotions of the jury. Provided there be a factual basis therefor in the evidence, the courts will allow counsel great latitude in suggesting probable theories to explain circumstances and situations disclosed by the record. The jury is the judge of the facts and a theory which has support in the evidence and is not wholly unreasonable may be argued, although the court may regard such theory as far-fetched and ill-founded.

Applying the rules stated, we overrule appellants' fourth point. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Teston v. Root, Tex.Civ.App., 95 S.W.2d 524, wr. ref.

■ In the course of argument, appellants' counsel referred to the facts that his clients, by taking a lease on the Elliff property had enabled them to pay their taxes during the early thirties. Appellees countered with the charge that appellants had shut down drilling operations in order to purchase royalty before bringing in a well. This charge has meager basis in the evidence, but constituted at most a misstatement or misinterpretation of the testimony. The arguments on both sides in the particulars mentioned do not bear directly upon the controlling issues submitted to the jury.

Appellants' fifth point does not present a reversible error and is overruled. Oil Belt Power Company v. Touchstone, Tex. Civ.App., 266 S.W. 432; Speer, Law of Special Issues in Texas, p. 458, § 334.

■ Appellees' counsel also remarked that a court reporter was taking down his remarks to the jury in the hope that something would be said so that the Court of Civil Appeals would grant a new trial. This observation was coupled with the statement that as the court reporter was present, any part of the testimony adduced at the trial could be read back to the members of the jury in case there existed a doubt in regard thereto. In making these remarks counsel was upon dangerous ground. City of Pampa v. Todd, Tex.Com. App., 59 S.W.2d 114. In the present case however the court reporter took down the arguments made by both sides and this fact was no doubt apparent to the jury. No objection was made to the remark, and no instructions of the court requested with reference thereto. In our opinion no reversible error is shown. Appellants' sixth point is overruled.

■ Appellees' pleadings contained certain allegations applicable to a theory of recovery based upon the doctrine of res ipsa loquitur. The case was submitted to the jury upon specific acts of negligence and no recovery sought upon the theory mentioned. In arguing the case, appellees' attorney made certain remarks which might be construed as an argument for a recovery under the res ipsa loquitur doctrine. Objection was made and the court instructed the jury to "disregard anything as to res ipsa loquitur." Appellees' counsel argued with the court after the ruling was made, but we think it was made reasonably clear to the jury that appellees' case rested upon specifically pleaded acts of negligence and not upon the doctrine of res ipsa loquitur. Appellants' seventh and eighth points are overruled.

■ By their ninth and tenth points appellants contend that the trial court erred in excluding certain comments in the nature of opinions and conclusions contained in reports and memoranda on file in the offices of the Railroad Commission.

Upon reports of bottom hole pressures of wells and sands in the Agua Dulce Field made to the Commission in 1938, there appeared certain comments, such as "This sand apparently has never been drained by the blowout," and "These sands have been drained by the blowout in the past, but are

not being drained appreciably now." The reports were received in evidence but the comments were rejected. Appellants also offered in evidence an inter-office memorandum made by V. E. Cottingham, Director of Production, which was apparently based upon the bottom hole pressure surveys above mentioned. This report states that gas had been drained from three sands as a result of the blowout and the implication is that no other sands were affected. The memorandum was made on November 9, 1938, and its evident purpose was to recommend to the Railroad Commission that an order be issued prohibiting the further blowing of gas into the air from wells in the field, as said wells were no longer suffering appreciable drainage from the blowout.

We are of the opinion that the trial judge's rulings were correct. Cottingham's report of November, 1938, was made for the primary purpose of determining whether or not certain gas wells should then be closed in. Statements as to which sands had in the past been drained was an incidental matter. The comments made on the bottom hole pressure reports by some undisclosed employee of the Commission were likewise incidental and stated purely as a matter of opinion. There was conflict in the testimony as to which sands had been drained by the blowout, and it would seem inadvisable to receive unsworn testimony upon the issue coming from an undisclosed person or from a person not subject to cross-examination.

In our opinion the opinions and conclusions excluded by the trial court were not admissible in evidence by virtue of the provisions of Article 3737c, Vernon's Ann.Civ. Stats. Appellants' ninth and tenth points are overruled.

 Appellants' eleventh and twelfth points relate to the sufficiency and preponderance of the evidence and assert that the verdict is excessive. By reason of the presence of these points this cause was remanded to this Court.

Said points read as follows:

"Eleventh Point. The findings of the jury that Appellees had suffered damage in the sum of $78,580.46, because of loss of gas, and damage in the sum of $69,967.73, because of loss of distillate, are without sufficient evidence to support them for the reason that it is apparent that such findings must have been based upon the speculative estimates made by the witness Jennings, who testified as to losses from sands in which no wells had been completed at the time of the blowout well, and as to which such witness gave no evidence of comparative pressures or loss of pressures, and as to which he offered no evidence of withdrawals, if any, but as to which sands said witness determined losses simply by using the average percentage of loss in six other sands without any proof that the conditions in the seven sands were comparable to the conditions in the six sands, and then gave his computation of total losses from all sands, because of all of which his estimate of total losses was obviously without competent and sufficient evidence to support.

"Twelfth Point. The findings of the jury that Appellees had suffered damage in the sum of $78,580.46, on account of loss of gas, and damage in the sum of $69,967.73, on account of loss of distillate, are so excessive and against the preponderance of the evidence that it is apparent they must have been based upon speculative estimates made by the witness Jennings who testified as to losses from seven sands in which no well had been completed at the time of the blowout well, and as to which the witness offered no evidence of comparative pressures or loss of pressures, and on which he offered no evidence of withdrawals, if any, but as to which sands said witness determined losses by simply using the average percentage of loss in six other sands, and then gave his computation of losses from all sands, because of all of which the total losses determined by him, and the total losses found by the jury, were excessive, without competent proof to support, and should be in all things set aside."

In our original opinion (210 S.W.2d 553) we summarized the testimony of the witness Jennings and stated the method of calculation employed by him in estimating that 13,096,717,000 cubic feet of gas and 195,713 barrels of distillate had been drained from the west 1500 acres of the Elliff tract, and that 57,625,728,000 cubic feet

of gas and 802,690 barrels of distillate had been drained from the east 1554.9 acres of the tract as a result of the blowout.

Appellants' points above set out attack the testimony of Jennings as being highly speculative and consequently insufficient to support the jury's findings made in response to Special Issues Nos. 14 and 15, 210 S.W.2d 554. Particular emphasis is placed upon the fact that losses in certain sands were estimated by making use of the average as to porosity, pressure, etc., of the sands tested immediately above and immediately below these sands as to which there had been no actual tests made to determine porosity and pressure. Jennings testified that this method of estimate was fairly accurate, and further that if the porosity of one sand shown upon an electric log is known, it is possible to tell the porosity of other sands also shown on the log. In this he was corroborated by Dr. Armstrong Price, another expert who testified. Information thus gained from inspection of electric logs of wells in the field entered into the computation of the final estimate. Jennings also testified that he had seen a gas well produce 262,000,000 feet per day through the casing, and that the blowout "was making a lot more gas than that." He also stated that in his opinion all of the gas sands exposed in the Driscoll had been affected by the blowout, and that the sands having the higher gas pressures would blow first and be followed by the sands of lower pressures as the pressure in the hole decreased.

Jennings' estimates included the period of time from November, 1936, when the blowout occurred, to June, 1938, although it is undisputed that more gas and distillate escaped from the blowout crater after the later date.

We are of the opinion that a jury could reasonably conclude from the evidence that Jennings was able to fairly estimate the amount of gas and distillate lost as a result of the blowout from the information obtained from drilling records and electric logs of the Agua Dulce Field. When the evidence is viewed in the light most favorable to the verdict, in accordance with the applicable rule, it can not be said that the jury's findings are without support in the evidence or against the overwhelming preponderance of the evidence. Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 161 A.L.R. 1393; Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936.

The Supreme Court's opinion supports the theory that appellees may recover for gas and distillate wrongfully lost or destroyed. Under this theory of recovery, the monetary award allowed by the jury under the facts and circumstances of this case cannot be regarded as excessive. Stated another way, we are of the opinion that the evidence is sufficient to support a finding that the Elliffs lost a sufficient amount of gas and distillate to support the jury's monetary conclusions of damages with gas figured at 2c per M., and distillate at $1.25 per barrel.

Appellants' eleventh and twelfth points are overruled.

■■■■ The two points contained in appellants' supplemental brief are designated as "First Point–A" and "First Point–B" and read as follows:

"First Point–A. In view of the fact that the Oil, Gas and Mineral Lease executed by the appellees on April 7, 1936, amended on August 8, 1936, conveyed to the lessee (Texon Drilling Company) a determinable fee title to the entire eight-eighths (8/8) of the gas, as such, in place under their lands, and such lease is still in force, appellees did not and could not have any title to any part of the gas, including its distillate content, which escaped from the Driscoll No. Two (the blowout) well on and after November 19, 1936 (the date of the blowout), and it was, accordingly, error for the trial court to permit recovery upon the theory that appellees owned part of such gas, including its distillate content, when it escaped at the surface and to measure their damages as for loss of personalty.

"First Point–B. Since appellees' royalties on gas, including its gasoline content, though payable in money, were real estate, the proper measure of their damage, if any, occasioned by appellants' negligent acts is the difference in the market value of such royalties, or royalty interests, before and

after the occurrence of such acts, and it was error for the trial court to measure appellees' damage as for conversion of personalty."

Appellants request leave to amend their original brief so as to include these two additional points. It is insisted that leave should be granted under authority of Gillette Motor Transport Co. v. Wichita Falls & South R. Co., Tex.Civ.App., 170 S.W.2d 629, and Felder v. Houston Transit Co., Tex.Civ.App., 203 S.W.2d 831, affirmed Tex.Sup., 208 S.W.2d 880.

Rule 431, R.C.P. prescribes a liberal practice relating to the amendment of briefs, but we have serious doubts of its application upon a remand from the Supreme Court to the Court of Civil Appeals. In such a case it would seem that the authority of the latter court would depend upon the remanding order. However that may be, it does not appear that a construction of the lease referred to was called for in the trial court. Consequently, there is no assignment supporting said "First Point–A." Rule 374, R.C.P.

In our original opinion we stated that appellees "also were the *owners* of an undivided one-half interest in and to the mineral estate underlying the East 1554.9 acres of the tract and all of the mineral estate underlying the West 1500 acres of the tract. Both tracts were subject to oil and gas leases so that the royalty interest of the Elliffs is a one-sixteenth on the East 1554.9 acres and a one-eighth on the West 1500 acres." 210 S.W.2d 554.

This statement as to property ownership was conceded to be correct in this Court and was not challenged by appellants in any way. Further, we are of the opinion that the point does not present a reversible error under the Supreme Court opinion. Even if appellees did not have "title" to certain portions of the gas and distillate destroyed and wasted, they possessed a property right relating thereto by reason of the provisions of the lease agreement. We overrule said "First Point–A."

"First Point–B" is supported by a proper assignment of error. Rule 374, T. R.C.P. Assignment No. XIV of the amended motion for new trial reads in part as follows:

"The Court erred in overruling defendants' objections to Special Issue No. 14, of the Court's charge as submitted to the jury, which objections were as follows: * * *

"5. The issue and instruction therewith submits an improper measure of damages, since plaintiffs' claim for damages is for trespass (in) and to the free-hold estate in the land and the proper measure of damage is the difference between the reasonable cash market value before and after the occurrence complained of."

"First Point–B" refers to assignment XIV, as did the first and third points contained in appellants' original brief. The Supreme Court was of the opinion that this assignment relating to the measure of damages was not properly preserved by said first and third points and the statements and arguments set forth thereunder. That Court refused to accept the contention that appellants, by challenging appellees' theory of recovery, "were raising the incidental question of the measure of damages."

Obviously, the purpose of First Point–B is to cure what the Supreme Court regarded as a defective presentation of the question of the proper measure of damages.

Under the Supreme Court's holding, we do not regard the measure of damages set forth in "First Point–B" as being the exclusive measure of damages applicable to a case of this character. The measure suggested is the one applicable to suits for injury to real property. We have no doubt that in cases of injuries, such as that sustained by appellees here, an action for damages to real property would lie, and we so held in our former opinion. Damages recoverable in such action would be measured by the difference in the values of the property before and after the injury. We also held in our former opinion that if appellees were to recover at all under the facts of this case, it must be as and for damages to real estate. This holding was reversed by the Supreme Court. That Court decided appellees were entitled to relief under another and additional theory, that is, that appellees could recover as and for the tak-

ing and destruction of gas and distillate which appellees owned or in which they had a property interest. The difference of opinion between this Court and the Supreme Court is neither narrow nor elusive, but is broad and fundamental. It goes to the concept of the nature of the action. The theory of the action necessarily indicates to some extent the factors which must be considered in ascertaining damages. A proper standard for the measure of damages to real property is inappropriate for measuring damages for the taking or destruction of personal property. It would be anomalous to say that appellees could elect to recover as and for gas taken and destroyed rather than for injury to real property, but that having made such election, their damages would nevertheless be governed by the same measure as that relating to damages to real property. For all practical purposes, it would restrict the appellees to an action for injury to real property and nullify the Supreme Court's holding.

We are requested to consider appellants' arguments relating to the measure of damages in connection with their contention that the award of damages is excessive. Undoubtedly the rate of destruction of gas and distillate occasioned by the blowout was vastly in excess of the rate of normal production which would be permitted under governmental regulations and market conditions. On the other hand, no payment has yet been made for appellees' gas and distillate which was destroyed in the years 1936, 1937 and 1938. It was not suggested to the trial court that either of the circumstances mentioned should be considered or included in the issues relating to damages and we do not wish to be understood as intimating that the comparatively simple formula adopted by the trial court is applicable to all blowout cases. Undoubtedly in most cases matters other than quantity and the market prices for oil, gas or distillate would have to be considered and the employment of a weighted and complicated formula might sometimes be necessary.

Appellants' "First Point–B" is overruled.

We have carefully considered all points presented and have perhaps unduly length-ened this opinion in an attempt to pass upon all contentions raised by appellants.

As none of appellants' points presents a reversible error, the judgment appealed from is affirmed.