WHITSON COMPANY, Inc., et al., Appellants,

v.

BLUFF CREEK OIL COMPANY et al., Appellees.

No. 15600.

Court of Civil Appeals of Texas.

Fort Worth.

March 18, 1955.

Rehearing Denied April 15, 1955.

Stine & Stine, Henrietta, and Hassell & Hassell and J. W. Hassell, Jr., Dallas, for appellants.

Robinson, Shipp, Robertson & Barnes, Okahoma City, Okl., Donald & Donald, and T. B. Coffield, Bowie, for appellees.

MASSEY, Chief Justice.

From a judgment entered in behalf of the owner of an "overriding" royalty interest in one lease, and in behalf of the owner of the leasehold estate in it and another lease, for damages because of the destruction of the value of the leasehold estate and royalty interest, for conversion of property and equipment from said leases, including in part the restoration of property and in part for the value of property converted, and for injunctive and other relief, the defendants appealed.

Judgment affirmed in part and reversed and remanded in part.

Suit in the court below actually involved several causes of action, some of which did not have as parties plaintiff and defendant the same persons as in others. It is believed that the following explanation would be helpful.

R. H. Rucker, Jr., was an individual who occasionally dealt in oil and gas leases. He was an officer in a corporation called the Bluff Creek Oil Company, which cor-

poration also dealt in oil and gas leases, and operated leases.

L. R. Whitson was an officer of O. W. R. Oil Company, a corporation, which owned and operated oil and gas leases, producing and selling oil and gas. L. R. Whitson, though having no official connection with another similar corporation, the Whitson Company, was personally interested in its welfare. The Whitson Company was primarily owned, operated and managed by the sons of L. R. Whitson, whom he was inclined to aid and guide toward successful and profitable business activities.

There were two parcels of real property in Montague County, Texas, which were under oil and gas leases to the Bluff Creek Oil Company. The first will be hereinafter termed the Fenoglio Lease, and the second, the Nabours Lease. These leases were neighboring, though not adjacent. The Nabours Lease was a full 7/8ths lease, but the Fenoglio Lease was a 6/8ths lease, being burdened with a 1/8 "overriding" royalty interest in R. H. Rucker, Jr., who retained such interest as a part of the compensation for the original transfer by him of the 6/8ths leasehold interest to Bluff Creek Oil Company.

Procedure was begun toward drilling an oil well on each of these leases. Whitson Company became interested in both projects and entered into negotiation of contracts whereby it acquired certain rights to the oil produced, saved and sold from any well or wells on them, and also acquired certain rights in the leasehold estates held by Bluff Creek Oil Company.

### The Fenoglio Lease.

Bluff Creek Oil Company and Whitson Company entered into a contract on August 31, 1949, the material provisions of which included the following language:

"Now, Therefore, for and in consideration of the sum of one dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, Bluff Creek Oil Co. does hereby bargain, sell, transfer, and assign and convey unto Whitson Company, Inc., its successors and assigns, an undivided fifteen-sixteenths (15/16ths) of six-eighths (6/8ths) interest in the proceeds from all oil, gas, casinghead gas and other minerals produced, saved and sold under the terms of the above described oil and gas lease.

"This assignment is made subject to the following terms and conditions:

"1. Assignee * * * shall be entitled to receive fifteen-sixteenths (15/16ths) of six-eighths (6/8ths) of the proceeds of the oil, gas, casinghead gas and other minerals produced, saved and sold from the above described land until such time as it has been reimbursed, for all sums expended by it in drilling and completing the well now located upon the above described premises, including sums advanced by it for the excess cost of seven-inch casing used in said well, and all sums expended by it in the operation of said well, * * *.

"2. At such time as said Whitson Company, Inc. shall have been reimbursed for all sums expended and advanced by it, as set out in paragraph No. 1, it shall be entitled to receive the full six-eighths (6/8ths) of the oil, gas, casinghead gas and other minerals produced, saved and sold from the above described land until it has received a sum equal to the sums received by Bluff Creek Oil Co. from the one-sixteenth (1/16th) of six-eighths (6/8ths) interest retained by it in this assignment.

"3. When the net returns to the parties hereto have been equalized, as above provided, then and thereafter Whitson Company, Inc. shall be entitled to receive one-half of six-eighths (1/2 of 6/8ths) of the oil, gas and other minerals produced, saved and sold from the above described premises, and the excess interest herein assigned to said Whitson Company, Inc. * * * and Bluff Creek Oil Co. shall thereafter be entitled to receive one-half of six-

eighths (½ of ⅚ths) of the oil, gas and other minerals produced, saved and sold from the above described land, and the parties hereto shall thereafter own the leasehold estate in equal one-half (½) shares, subject to the overriding royalty interest reserved by R. H. Rucker, Jr. * * *.

"4. Assignor, Bluff Creek Oil Co., reserves the right, at any time, to reimburse Assignee for all sums expended or advanced by it, as hereinabove provided, and thereupon to become vested with an undivided one-half (½) interest in the oil and gas leasehold estate, subject to the overriding royalty interest referred to above.

"To Have and To Hold the rights and interests herein assigned unto the said Assignee, its successors and assigns, pursuant to the terms and conditions of the oil and gas lease above described and of the prior assignment hereof."

Pursuant to this contract, drilling was either begun or completed at Whitson Company's expense, and upon the completion of the well, operations incident to the production of oil were conducted,—the expense of which Whitson Company paid according to the provisions of the contract.

■ Our view of this transaction between the Bluff Creek Oil Company and Whitson Company in regard to the Fenoglio Lease is that Whitson acquired thereby a right, analogous to that of an option, to acquire an undivided one-half interest in and to the six-eighths title of Bluff Creek Oil Company to the oil and gas in place under the lease, and an undivided one-half interest in and to all the interests Bluff Creek Oil Company might otherwise be considered to own, such as its rights to use the surface in the search for and production of oil, etc. An option passes no title but is an executory contract prescribing conditions upon the occurrence of which an optionee may become entitled to demand passage of title. 37 Tex.Dig., Vendor and Purchaser, ■ Of course, in the pres-

ent instance, by express agreement, title was prescribed to automatically pass upon the performance of the conditions precedent.

Of course, whether from the production of the well in question, or from it along with other wells which might have been drilled through Bluff Creek Oil Company's right to do so, under the terms of its leasehold interest acquired from R. H. Rucker, Jr., the Whitson Company had the right to take into its possession all the oil produced and saved, subject to the right of Rucker and the primary royalty owner, and to sell it on the market. It had the right to retain ¹⁵⁄₁₆ths of the amount (which but for the contract and services of Whitson Company under the contract would have belonged to Bluff Creek Oil Company) yielding up to Bluff Creek Oil Company only ¹⁄₁₆th thereof. However, this ¹⁵⁄₁₆ths was to be credited to expense, which—but for the contract—would have been the expense of Bluff Creek Oil Company. But for the unfortunate circumstances hereinafter related, it would have been expected that continued application of the said ¹⁵⁄₁₆ths of such proceeds received from the sale of the oil produced and saved would have eventually made Whitson Company whole. With such done, supplemented by a short period of time during which the Whitson Company would take the entire proceeds (which but for the contract would have gone to Bluff Creek Oil Company) until it was reimbursed further the amount of the cumulative ¹⁄₁₆th payments made to Bluff Creek Oil Company, Whitson Company would have become, in the manner provided, the owner of one-half of the whole interest theretofore owned and possessed by the Bluff Creek Oil Company.

From the date of the contract, by virtue of the fact that Whitson Company assumed certain obligations of Bluff Creek Oil Company, thereby relieving the latter of these obligations, the Bluff Creek Oil Company's leasehold estate and interest became burdened with those rights provided by the contract to belong to Whitson Company until that day contemplated when Whitson Company and Bluff Creek Oil Company

would become joint owners of the leasehold estate of the latter in and to the Fenoglio Lease. In other words, it is our opinion that the value of the leasehold estate of Bluff Creek Oil Company at any particular date in the interim period would not be the value of the same in the ordinary case. Rather would such value be the value of the leasehold estate as burdened with the rights of the Whitson Company. Had Bluff Creek Oil Company sold such interest it had during this period, the interest sold would have been subject to Whitson Company's rights, and it goes without saying that a prospective purchaser would have insisted upon a substantial reduction in price, knowing that $^{15}\!/_{16}$ths of the proceeds from the sale of the oil were being kept by the Whitson Company and applied upon its contract with Bluff Creek Oil Company,—and knowing additionally that once there had been a complete performance by Whitson Company, as contemplated by the contract, his title to and interest in what he purchased would be reduced by 50%.

The same thing would not be true as to the "overriding" royalty interest of Rucker, for it was not burdened with the contract. Therefore, the value of his interest would not be affected by the contract.

The Fenoglio Lease is involved in the appeal because the Whitson Company and L. R. Whitson complain of the judgment rendered against them for damages because of the destruction of the market value of Bluff Creek Oil Company's leasehold estate, and because of the destruction of the market value of Rucker's "overriding" royalty interest. There was a part of the judgment which extended against Whitson Company, L. R. Whitson, and O. W. R. Oil Company because of conversion of property and equipment from the Fenoglio Lease, and involving receivership costs in connection with the protection of part or all of such property, etc.

### The Nabours Lease.

A similar contract was entered into upon the Nabours Lease by the same parties.

Whether or not there was any "overriding" royalty reserved out of the leasehold estate covered by the contract is immaterial upon this appeal. The single oil well which was drilled on the Nabours Lease yielded commercial production, and there is no dispute but what from the sale of this production there was a proper application of profits to the contract of Whitson Company with Bluff Creek Oil Company. Each day's production brings nearer the day upon which Whitson Company might reasonably be expected to become the owner of an equal interest with Bluff Creek Oil Company in the leasehold estate of the Nabours Lease.

The Nabours Lease is involved in the appeal because certain expenses of a receiver appointed to conduct its operations were taxed against the Whitson Company, though the receivership—in so far as it extended to such operations—was dissolved. See Whitson Company, Inc., v. Bluff Creek Oil Company, 1953, Tex.Civ.App., Fort Worth, 256 S.W.2d 1012, writ dismissed, w. o. j. Of this, the Whitson Company complains. The Nabours Lease is further involved in the appeal because damages for the conversion of property and equipment from said lease were assessed against O. W. R. Oil Company. Of this, the O. W. R. Oil Company complains. Also, the Nabours Lease is involved in the appeal because a permanent injunction was issued by the trial court restraining Whitson Company, L. R. Whitson and O. W. R. Oil Company from disposing of, or disconnecting or using otherwise than for the operation of said lease, the equipment thereof, from interfering with the operation of the lease and the production of oil therefrom, etc. Of this, all three of said parties complain.

### History of the Controversy.

The well on the Fenoglio Lease was drilled the latter part of 1949 and was brought in as a commercial oil producer. It was initially operated by the Bluff Creek Oil Company. All profits from such operation were delivered to the Whitson Company, and such Company made all the

disbursements, kept the books and applied credits under the provisions of the contract, etc. In the spring of 1951, the well began to "make water". That is, though it was still producing oil, it started producing water at the same time. Then, in about June of 1951 the well quit flowing. Swabbing operations brought about a resumption of production. About the same time a test of the well was caused to be made to determine the location in the hole which was the source of the water. By agreement of the parties, but without any reduction thereof to writing, the Whitson Company and Mr. L. R. Whitson took possession of the well premises and from that point assumed full control of the well operations. The well was "shot", that is, an explosive charge or series of charges were set off which perforated the zone from which the oil production was being realized, and this operation was successful. At least the well was put back on profitable production. Whitson Company continued to operate the well. Bluff Creek Oil Company ceased any activity in connection with its operation.

There appears to have been a similar experience with the well in the fall of 1951, and a similar correction, followed by a second like experience and correction in January of 1952. The trouble seemed to have been somewhat exasperating. Finally, further trouble was encountered in April of 1952. Mr. L. R. Whitson went to the scene of the trouble. Upon his direction and authority, what is known as "Torpedo Jets shooting a hole 1 inch" were discharged in the hole at depths between 6,188 to 6,178 feet. The character of discharge was by what is sometimes called "an open-hole gun". The charges made several holes, each one inch in diameter, perforating the metal casing in the well, and perforating the formation around the casing. Approximately twenty such discharges were set off in the ten feet of zone perforated. Despite this action, the well did not come into production. Instead fluids coming from the well were water, about 95% and oil, about 5%. The Whitson Company employees asked Mr. L. R. Whitson, who was still present, what they should do under the circumstances. He replied, "It looks to me like you ought to abandon the well". Then he left the vicinity. Mr. C. O. Glenn, the superintendent for the Whitson Company, testified that L. R. Whitson gave him instructions to "pull the pipe" and move it off the lease.

During the period necessarily incurred in the doing, and immediately following receipt of such instruction or suggestion from L. R. Whitson, the Whitson Company employees proceeded to pull the casing out of the well, plug it, and abandon it. They, and employees of the O. W. R. Oil Company, moved the property and equipment theretofore at the well-site off the Fenoglio Lease and onto premises belonging to the O. W. R. Oil Company. Shortly thereafter, the properties of the O. W. R. Oil Company in the vicinity were all acquired by the Whitson Company.

No effort was made to drill into and test the production potential of a lower zone of the same formation as that formerly yielding production from the well, though such lower zone had been logged and tested sufficiently to indicate a probability that a commercial yield could be expected therefrom. No one contacted any person connected with the Bluff Creek Oil Company or Mr. R. H. Rucker, Jr., and it was some time later when these parties first discovered what had happened. By that time the well on the lease had been pulled, plugged and abandoned, and all the property and equipment used in connection therewith removed.

The Whitson Company and its officials were clearly of the opinion that the property and equipment of the well on the Fenoglio Lease belonged to the Whitson Company and that the Bluff Creek Oil Company had no rights therein. They had a like belief as to the property and equipment on the Nabours Lease at the site of the well there in production. The Whitson Company and its officials were also of the opinion that they were the owners of at least a majority interest in the leasehold

estates under both the Fenoglio and Nabours Leases, and that their authority in connection with operations on both leases, including the right to do as they thought best relative to removing property and equipment, pulling casing, abandoning wells, etc., was unaffected by any right of the Bluff Creek Oil Company.

Pursuant to its opinion and position, Whitson Company had caused or permitted O. W. R. Oil Company to remove certain property and equipment from the premises of the Nabours Lease, or at least caused such property and equipment to be delivered to the O. W. R. Oil Company, though, as we have heretofore noted, the Nabours Lease was under production and Whitson Company was competently operating the same. The operations on the Nabours Lease were conducted by Whitson Company pursuant to an oral agreement of consent, similar to that whereby it had initially taken charge of the operations on the Fenoglio Lease.

As result of the affirmation of these rights which Whitson Company believed it had, and further because of what had transpired on the Fenoglio Lease, the Bluff Creek Oil Company and R. H. Rucker, Jr., filed suit against the Whitson Company, L. R. Whitson, and the O. W. R. Oil Company. The District Court of Montague County appointed a receiver to take charge of the property and equipment on the Nabours Lease, and to take charge of such property as had been removed therefrom, and from the Fenoglio Lease, as might be located and taken into possession. The same receiver was appointed and placed in control of the operations in progress on the Nabours Lease. Upon an appeal, the action of the trial court was affirmed as to the property, but reversed as to the operations on the Nabours Lease. See Whitson Company, Inc., v. Bluff Creek Oil Company, supra.

Subsequently, in the spring of 1944, the suit filed by Bluff Creek Oil Company and R. H. Rucker, Jr., was tried on the merits. A temporary injunction, not appealed from, was tried as a part of the case and merged into a permanent injunction. We will consider this suit as by the various causes of action involved in the court below and appealed to this court.

### The Award of Damages Because of Lease Destruction.

Bluff Creek Oil Company's suit was against the Whitson Company and L. R. Whitson on account of its loss and damage resulting from the destruction of the value of the Fenoglio Lease. L. R. Whitson was claimed to have been jointly liable along with the Whitson Company under the circumstances above explained. The suit of R. H. Rucker, Jr., was against the same defendants because of the loss of and damage to his "overriding" interest in the lease. There is no complaint on the appeal of the findings underlying the right of Bluff Creek Oil Company and R. H. Rucker, Jr., to damages, at least in so far as Whitson Company is concerned. The circumstances were somewhat similar to those in the case of Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., Tex. Com.App.1927, 298 S.W. 554. However, the principal complaint of the appellants upon the appeal is upon the measure of damage adopted.

Upon this phase of the case, the trial court submitted the following special issue to the jury:

"What do you find from a preponderance of the evidence was the reasonable cash market value, if any, of the ⅞ths leasehold estate in the oil and gas lease in question, exclusive of all equipment, just prior to the commencement of the last remedial work on said well by Whitson Company? Answer: $50,000.00."

■■■ L. R. Whitson and the Whitson Company objected to the submission of this issue, and preserved their complaint thereof at all stages of the proceedings. Their contention in the trial court and upon this appeal is that the issue as submitted and the answer thereto considered occasioned the wrong measure of damages and that the judgment was erroneous be-

cause it was a judgment based thereon. They pointed out that the value inquired about in the issue was not qualified by proper consideration of the burden existing pursuant to the contract between Whitson Company and Bluff Creek Oil Company, affecting its value. We believe that the point thereupon is well taken. Indeed, there seems to be insufficient evidence, if any at all, upon the value of such leasehold estate as so burdened, and the affected parties made objection and preserved points on the appeal because thereof. However, the question is in our opinion settled because there was an erroneous issue and the answer thereto would be an erroneous finding on the matter of damages underlying the judgment which was entered based upon such finding. The judgment, therefore, cannot stand in the particular respect in question.

As the appellees upon the appeal contend, we agree that the ordinary and proper measure of damages for the destruction of any land, or interest in land, in a leasehold estate, or interest thereunder, is the difference in its value immediately prior to the occurrence of the loss and damage, and immediately subsequent to the occurrence. Pickens v. Harrison, 1952, 151 Tex. 562, 252 S.W.2d 575; and other cases under 14 Tex.Dig., Damages, ▇▇▇ Seemingly this rule was applied in the case of Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., supra. The lease and the "overriding" royalty interest are interests in realty. 31-A Tex.Jur., p. 190, "Oil and Gas", sec. 117, et seq., "Estates or Interests under Lease"; Veal v. Thomason, 1942, 138 Tex. 341, 159 S.W.2d 472. There is no distinction in the applicable measure of damage in cases of damages to differing estates in land. Texon Drilling Co. v. Elliff, Tex.Civ.App., San Antonio 1947, 210 S.W.2d 553, 557 (and authorities there cited), reversed on other grounds. But this rule would be qualified in a case such as the one before us, where the value immediately prior to the occurrence involves more than the market value of the property free and unaffected by any other interest therein. The special issue submitted disregards the fact that the contract between Bluff Creek Oil Company and the Whitson Company, in full force and effect at the time, operated to reduce the market value of Bluff Creek Oil Company's interest in the lease. As so reduced must the inquiry upon damages be made of the jury as the finder of fact in the case. Bluff Creek Oil Company is not entitled to collect damages because of any loss it did not sustain. Should effect be given to the jury's finding in answer to the issue submitted would be to give it a greater amount than that to which it is entitled. Therefore, reversible error is apparent.

As previously noted, the same qualification does not apply in the case of R. H. Rucker, Jr., the owner of the "overriding" royalty interest in and to the same property. This is true because the contract does not operate to diminish the value of his interest. Therefore, the almost identical inquiry made in the special issue upon the matter of the value of his interest before the occurrence of the loss and damage was correct, and the judgment entered in his behalf was wholly proper as based upon a jury finding properly establishing his damages.

### On the Matter of L. R. Whitson's Liability for Loss and Damage of the Fenoglio Lease.

▇▇ The judgment entered in the suit held L. R. Whitson personally liable, along with the Whitson Company, for the loss and damage R. H. Rucker, Jr., sustained as result of the destruction of the value of his interest in the production from the Fenoglio Lease. Complaint is made and the contention advanced that no case was made out against L. R. Whitson.

The special issue bearing upon the personal liability reads as follows:

"Do you find from a preponderance of the evidence that L. R. Whitson and Whitson Company were acting jointly in conducting the operations of the Fenoglio lease during the time in question? Answer: Yes."

As previously noticed, L. R. Whitson was present at the scene or in that vicinity and gave the orders, or in any event made suggestions direct to the employees of the Whitson Company which were treated and acted upon as orders, and resulted in the destruction of the value of the well and the Fenoglio Lease. Under the evidence it was further shown that L. R. Whitson had full authority to do all the things which he did do in so far as the Whitson Company was concerned, and on account of the doing of which the Whitson Company's liability was established by the jury verdict. We believe that L. R. Whitson was found by the verdict to be jointly and severally liable along with the Whitson Company upon sufficient competent evidence. His liability was that of an agent, if not as a joint adventurer, since an agent is always primarily liable for his own torts despite the fact that his principal is likewise responsible by and through him under the doctrine of respondeat superior, where those additional facts are existent which demonstrate his agency in their commission. 2 Tex.Jur., p. 589, "Agency", sec. 177, "Agency or Employment as Affecting Liability of Tort-feasor". Of course, the issue submitted was posed upon a situation analogous to that in the case of joint adventurers, where one commits wrongful acts in conducting the joint enterprise of controlling and operating premises or the use of contrivances where all adventurers are liable for the tort of the one. 48 C.J.S., Joint Adventures, § 14, sub. e, p. 870; 30–B Tex.Jur., p. 202, sec. 31 (formerly 30 Tex.Jur., p. 776). We believe the finding in the instant case to be sufficient as it would undoubtedly be in those cases considered in C.J.S., particularly since there was no objection to the issue, and since there was no request for specially requested issues posed along the usual lines in instances of disputed agency.

On the Matter of Judgment Against O. W. R. Oil Company for the Value of Bluff Creek Oil Company's Interest in Property Converted from the Nabours Lease.

In connection with the receivership there was certain property removed from the premises of the Nabours Lease which was not taken into possession by the receiver, it having been alleged to be property which was converted by O. W. R. Oil Company jointly and in concert with Whitson Company and L. R. Whitson. Under the judgment, the value of the interest of Bluff Creek Oil Company in such property was $883.12. No complaint on the same point upon the appeal is made by L. R. Whitson or the Whitson Company.

■ A point complaining of this action by the trial court is brought forward upon the appeal by the O. W. R. Oil Company, but the error so assigned is not briefed and is therefore considered by us as having been waived. See Texas Rules of Civil Procedure, rule 418 and cases annotated thereunder.

On the Matter of Receivership Expenses Incurred in Operating the Nabours Lease.

As previously noticed, this court by its reversal of the trial court in connection with the appointment of a receiver to operate the well on the Nabours Lease, vacated the appointment in that respect and it would seem that Whitson Company's authority to conduct the operations thereupon was restored. Upon the judgment entered in the trial of the merits of the cause, the expenses of the operation during the time the well was under the receiver's control was found at the figure of $712.50, and adjudged against the Whitson Company along with an order that such amount should be charged against the contract between said Company and Bluff Creek Oil Company as an operating expense. Under this contract Whitson Company was reimbursing itself its costs and expenses at the rate of $15/16$ths of the gross profits received from the oil produced, saved and sold as result of the operations of the well on the Nabours Lease. Assuming an ultimate complete "pay out" of the expenses charged by the contract of the parties against the well in question, to result in equal ownership of the leasehold estate between Whitson Company and Bluff Creek Oil Company, the expenses would eventually be equally borne by such parties if not entirely borne by Bluff Creek

Oil Company. However, there would of course be a possibility of a failure of the well in which event all of such expense would fall upon the Whitson Company.

There is no contention that the amount of $712.50 is unreasonable for the receiver's supervisory services. It appears from the evidence that said amount was based upon the value of such services. Supervision of the operations would have been necessary even had no receiver been appointed, and the cost thereof would have been chargeable to the operation expenses, paid by Whitson Company, and by it in turn charged to the account between the parties upon the lease and well "pay out". Under these circumstances the order of the trial court in the respect complained of was an adjustment which, as between the parties, was equitable and proper in the circumstances and was within the discretion of the trial court. 36 Tex.Jur., p. 262, "Receivers", sec. 134, "Liability for Costs and Expenses". This is true even though the appointment of the receiver was improper in the initial instance.

## On the Matter of Injunction.

■ A permanent injunction was issued, pursuant to trial of the suit on the merits, which restrained L. R. Whitson, Whitson Company, and the O. W. R. Oil Company from disposing of any property and equipment on the Nabours Lease, and from interfering with the operation of such lease. The record indicates that the Whitson Company is operating the lease. The only evidence which might be considered as having a bearing upon the matter came from C. O. Glenn, superintendent for the Whitson Company, during the introduction of the plaintiffs' opening case,—and from L. R. Whitson on cross-examination. Such evidence as there was upon the matter of the property and equipment indicates that such as was taken prior to the occasion of the suit was taken in the belief that it was property which belonged to Whitson Company only, but that upon the suit being filed it was recognized that a mistake might have been made. Orders were given to

Mr. Glenn that such property should not be freely handled as property belonging to Whitson Company, as theretofore had been the case, and that there was a question about whether it belonged to Whitson Company. Upon the question of interfering with the operation of the Nabours Lease, the state of the record indicates that the Whitson Company was left in charge of these operations, though this might not actually be the case. In any event, in respect to property or to operations, the evidence falls short of the requisite that it show an intention on the part of the persons enjoined to do something which would injure the complainants, or that the enjoined actions were sufficiently threatening and certain as to have reasonably aroused the fear of the applicant for the writ. 24 Tex.Jur., pp. 145 and 146, secs. 103 and 104. For this reason, judgment in respect to the injunction cannot stand.

■ There is a claimed procedural error relative to the matter of damages to the Fenoglio Lease. A witness upon the market value of the Fenoglio Lease upon the occasion of a prior trial, in which a mistrial occurred, was shown to have been beyond the jurisdiction of the court upon the occasion of the later trial, and his earlier testimony on direct examination was read to the jury. There was no impropriety shown in the introduction of the evidence given the jury. There was no evidence contradicting the proof introduced to the effect that the witness was beyond the jurisdiction of the trial court at the time of the later trial. Hence, occasion for introduction of the testimony was demonstrated as an exception to the hearsay rule, 17 Tex.Jur., p. 658, sec. 276.

The judgment entered in the court below in favor of R. J. Rucker, Jr., and against Whitson Company, Inc., and L. R. Whitson upon the matter of damages is affirmed.

The judgment entered in the court below in favor of Bluff Creek Oil Company, a corporation, against O. W. R. Oil Company as well as against Whitson Company, Inc., and L. R. Whitson for the sum of

$883.12, the value of the interest of Bluff Creek Oil Company in property converted from the premises of the Nabours Lease and not practical of restoration, is affirmed.

The judgment entered in the court below taxing costs of the receivership upon the Nabours Lease operations against Whitson Company, Inc., with provision that said costs should be charged by it against the contract existent between Bluff Creek Oil Company and Whitson Company on the Nabours Lease operations, is affirmed.

The judgment entered in the court below in favor of Bluff Creek Oil Company, a corporation, against Whitson Company, Inc., and L. R. Whitson upon the matter of damages for destruction of the value of the former's leasehold estate interest in and to the Fenoglio Lease, is reversed and remanded for another trial.

The judgment entered in the court below in favor of Bluff Creek Oil Company, a corporation, against Whitson Company, Inc., L. R. Whitson and O. W. R. Oil Company, granting a permanent injunction against disposing of, disconnecting or using otherwise than for the operation of the Nabours Lease the equipment on said lease, and from interfering in any way with the operation of said lease and the production of oil therefrom, etc., is reversed and remanded for another trial.

On Motion for Rehearing.

Upon the motions for rehearing filed by parties on both sides of this controversy, we find error assigned to the same matter by all.

The appellants make assignment as follows:

"The Court erred in not making any finding or rendering any judgment disposing of the issue as to the personal property recovered from the Fenoglio lease, the judgment of the trial court having vested title thereto to the plaintiff, Bluff Creek Oil Company, and no disposition having been made of appellants' claim therefor."

Appellee Bluff Creek Oil Company makes assignment as follows:

"The error of the Court of Civil Appeals in failing to affirm the judgment of the trial court in favor of Bluff Creek Oil Company against all Appellants for title and possession to property removed from the Fenoglio lease, and for the value of equipment converted in the sum of $3,957.77 as set out in the judgment."

In our original opinion, we find appended to the paragraph giving the reason the Fenoglio lease is involved in the appeal our statement to the effect that there was a part of the judgment which was entered by the trial court which extended against all three appellants because of conversion of property and equipment from that lease. The language was inserted as it was and at the place where it was inserted because from our understanding of the appellants' points of error, there was no error assigned to the judgment rendered by the lower court in this particular. That being true, we had no occasion to pass upon any point or to belabor the question in our opinion. Furthermore, if the appellants' points on appeal could be so construed as having embraced complaint as now made upon motion for rehearing, such would have properly been considered by us as waived in any event, since it was not briefed.

All motions for rehearing are refused.