Joyce Lee Lewis **GARRETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 642–83.

Court of Criminal Appeals of Texas, En Banc.

June 11, 1986.

On Denial of Rehearing April 20, 1988.

Mark Stevens, Stephen E. Van Gaasbeck, David K. Chapman, of counsel, San Antonio, for appellant.

Charles R. Borchers, Dist. Atty., Laredo, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

By its verdict the jury found appellant "guilty of murder as charged in the indictment." Appellant was duly convicted, and her punishment assessed by the trial court at thirty five years confinement.

The cause was appealed to the San Antonio Court of Appeals, which reversed the conviction on the basis of unassigned fundamental error in the trial court's charge to the jury at the conclusion of the guilt phase of the trial. *Garrett v. State*, 624 S.W.2d 953 (Tex.App.—San Antonio 1981). The court of appeals held that the trial court fundamentally erred when it failed to apply the law of transferred intent to the facts of the case. See V.T.C.A. Penal Code, § 6.04(b)(2). This Court granted the

State's petition for discretionary review and reversed the decision of the court of appeals, holding that failure to apply the law of transferred intent to the facts of the case in the court's charge does not constitute fundamental error.[1] The cause was remanded to the court of appeals "for consideration of appellant's (assigned) grounds of error." *Garrett v. State,* 642 S.W.2d 779, 781 (Tex.Cr.App.1982). Appellant filed a motion for rehearing in this Court in which she argued for the first time that the evidence was insufficient to support the jury's verdict. This motion was denied.

Subsequent to our remand of the cause to the court of appeals appellant filed an amended brief in that court in which he reiterated his argument that the evidence was insufficient to support the conviction. The court of appeals agreed, again reversed appellant's conviction, and this time remanded to the trial court with instructions that an order of acquittal be entered in the cause. It was observed, however, that "[t]he State is not precluded from retrying appellant on a lesser included offense of murder." *Garrett v. State,* 656 S.W.2d 97, 101–02 (Tex.App.—San Antonio 1983).

### STATE'S PETITION

The State has raised what essentially amounts to three grounds for review in its petition. We will examine these grounds seriatim.

■ Initially the State argues that after this Court remanded the cause to the court of appeals for consideration of appellant's assigned grounds of error, that court was without jurisdiction to entertain an amended or supplemental brief raising grounds of

error not contemplated under the terms of our remand order. We disagree.

Effective September 1, 1981, by virtue of approval of amended Article V, § 5, Constitution of Texas and enactment of amendments to Articles 4.04 and 44.24, and of Article 44.45, V.A.C.C.P., this Court has jurisdiction, power and authority to exercise sound judicial discretion to review decisions of courts of appeals in criminal cases. Like the Supreme Court, this Court has plenary power upon review to dispose of a cause "as the law and nature of the case may require," including remanding it to the court of appeals from whence it came. Articles 44.24(b), 44.25, 44.45(b)(7) and Tex.Cr. App.Rule 304(k). And when deemed appropriate the Court has routinely remanded to courts of appeals: e.g., *Sanchez v. State,* 628 S.W.2d 780 (Tex.Cr.App.1982); *Ben-Schoter v. State,* 638 S.W.2d 902 (Tex.Cr. App.1982); *Finch v. State,* 643 S.W.2d 414 (Tex.Cr.App.1982); *Cosper v. State,* 650 S.W.2d 839 (Tex.Cr.App.1983); *Szilvasy v. State,* 678 S.W.2d 77 (Tex.Cr.App.1984).[2]

Jurisdiction, power and authority to decide an ordinary criminal cause *on direct appeal* is now vested alone in courts of appeals. Article V, § 6, Constitution of Texas, and Article 4.03, V.A.C.C.P. "Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute." *Carter v. State,* 656 S.W.2d 468, 469 (Tex.Cr.App.1983). Now compare delineation of jurisdiction of this Court in Article 4.04, V.A.C.C.P., to "review any decision of a court of appeals in a criminal case."[3]

As in this cause, where a court of appeals renders a decision that reverses judg-

---

1. We do not now pass on the question whether the error perceived by the court of appeals would constitute fundamental error under our decision in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985).

2. In several of those opinions Article 44.37, V.A. C.C.P., is cited as conferring authority on this Court summarily to grant a petition for discretionary review and to remand the cause for further consideration. Yet, in context of articles immediately surrounding that particular statute, "orders on appeal" relate only to habeas

corpus proceedings; see also decisions annotated under Article 44.37, supra.

3. Thus, that this Court denied appellant's motion for rehearing on the State's first petition for discretionary review does not mean the Court passed, expressly or implicitly, on the merits of the claim of insufficient evidence made for the first time therein. Ordinarily this Court refuses review of grounds not raised or entertained in the court of appeals, *Lambrecht v. State,* 681 S.W.2d 614 (Tex.Cr.App.1984).

ment of conviction without ruling on all grounds of error raised on appeal, and on discretionary review this Court determines that the reason for that decision is erroneous and reverses the judgment of the court of appeals, we have removed as a bar whatever error led the court below to pretermit determination of other matters within its jurisdiction, power and authority on direct appeal. There is nothing left for this Court to review, and if the court of appeals is to exercise its direct appeal jurisdiction the only proper disposition of the cause by this Court is to remand it to the court of appeals for that purpose.

When the judgment of this Court reversing the judgment of court of appeals and remanding the cause to that court becomes final, this Court has relinquished its review jurisdiction in the cause. *Finch v. State,* 643 S.W.2d 415 (Tex.Cr.App.1982). Remand in that instance is purely a simple procedural device to return the cause to the court of appeals. No order instructing the court of appeals to exercise its jurisdiction, power and authority is necessary for it to proceed to decide the direct appeal. When jurisdiction over the cause is restored by remand neither statutes nor scanty prior decisions cited above dictate that the court of appeals is limited in its renewed appellate consideration of the cause to the terms of our order of remand.

Indeed, an "order" that the court of appeals "consider appellant's grounds of error" in a criminal case is superfluous, for such is its function, and according to Article 40.09, § 9 on direct appeal an appellate court is obliged to consider every ground of error it can "identify and understand," *Ben-Schoter v. State,* 638 S.W.2d 902 (Tex. Cr.App.1982), especially one that might cause reversal of a judgment of conviction.

Where not inconsistent Tex.Cr.App.Rule 211 incorporates Rules of Civil Procedure "to govern proceedings in the court of appeals in criminal cases." Pursuant to Rule 431, T.R.Civ.P. in effect when the San Antonio Court of Appeals rendered its decision, a brief may be amended or supplemented at any time when justice requires upon such terms as the court of appeals may prescribe [see now Rule 414(n), T.R. Civ.P. and prospective Rule 64(*o* ), T.R.App. P.]. A routine general remand should not foreclose availability of applicable rules of procedure. Thus, sufficiency of the evidence was properly made a ground of error in the court of appeals.

Finally, since review jurisdiction of this Court was invoked solely to correct a *sua sponte* finding of "fundamental error"—a disposition that caused the court of appeals to conclude further exercising its own jurisdiction over the cause—for this Court to issue an "order of remand" to restrict the court of appeals in renewed exercise of its own jurisdiction, power and authority would seem to be an impermissible and unwarranted abridgement of constitutional grant of same to courts of appeals by Article V, § 6, Constitution of Texas, as implemented by Articles 4.03, 44.24 and 44.25, V.A.C.C.P.

For these reasons we conclude that the court of appeals was within its authority in entertaining appellant's amended brief, and we turn now to consider the substance of its holding that the evidence was insufficient to support appellant's conviction.

The indictment alleged that appellant "knowingly cause[d] the death of an individual, Betty Lynn Bennett, by shooting her with a gun." Though already set out in both opinions by the court of appeals below, we briefly rehearse the evidence in the light most favorable to the jury's verdict. On the evening of September 22, 1977 the deceased, her husband and their three children were having a barbeque at a table outside of their trailer home in a trailer park in Carrizo Springs. Also present was a neighbor, Bill Rankin. Sometime during the course of the evening appellant drove up and asked the deceased's daughter, Sarah Gail Bennett, to obtain permission for appellant to join them at table. Sarah saw a rifle in the car, and appellant told her it was loaded, that it had no safety and that appellant wanted to shoot Rankin because he had previously shot appellant's dog. Nevertheless, appellant was allowed to join the group.

Sarah and the deceased soon retired to the trailer to do the dishes. Subsequently they heard an argument break out between appellant and Rankin about the dog that had been shot. Sarah watched from the door as appellant approached her car, retrieved the rifle and leaned over the trunk of the car, pointing the rifle toward the trailer. Although no witness could testify positively that appellant was aiming at Rankin, Rankin himself testified he was somewhere between the car and trailer, with his back to appellant. Sarah beckoned to the deceased to come to the door, and as they looked on appellant fired. The bullet struck the deceased in the head, killing her.

In its charge to the jury the trial court authorized the jury to convict appellant upon a finding that she "did ... knowingly cause the death of an individual, Betty Lynn Bennett, by shooting her with a gun." Immediately thereafter appears in the charge an abstract statement of the law of transferred intent as defined under § 6.04(b)(2), supra. Nowhere in the charge was the law of transferred intent applied to the facts that were developed at trial. See, e.g., P. McClung, Jury Charges For Texas Criminal Practice (1985 ed.), at pp. 222–23. Neither appellant nor the State voiced any objection to this (or any other) deficiency in the charge; nor are there special requested instructions from either party pursuant to Art. 36.15, V.A.C.C.P. in the record.

En route to finding that this omission did not constitute fundamental error, this Court observed:

"... A charge on transferred intent is by its nature favorable to the State and detrimental to the defendant. With the provisions of Sec. 6.04(b)(4) omitted from the charge, the prosecution is presented with the greater burden of proving a 'knowing' act in which the defendant was

aware that her conduct was reasonably certain to cause the *actual* result rather than merely the desired result. V.T.C.A. Penal Code, Sec. 6.03(b)." [4]

*Garrett v. State,* 642 S.W.2d at 781. Seizing upon this language the court of appeals concluded that the State had failed to sustain the greater burden of proving a knowing killing of the deceased in this cause.

The State's second argument is that the court of appeals erred in interpreting our opinion on the State's first petition for discretionary review as holding that under the charge as given the jury was not authorized to convict appellant on a theory of transferred intent. Yet, while it is true that was not the *holding* of our opinion, that conclusion nonetheless inevitably follows from what was observed. The court of appeals relied on *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1982), where it was determined that appellate courts should "review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment *as incorporated into the charge." Id.,* at 715. Here the theory of murder incorporated in the paragraph authorizing the jury to convict did not allow for a guilty verdict based upon a finding that appellant, while desiring, contemplating or risking the death of Rankin, committed an act which resulted in the death of the deceased, as was clearly the theory propounded by the State in its presentation of the evidence.[5] Rather, the jury was required to find that appellant was aware her conduct in discharging the rifle was reasonably certain to cause the death of the deceased. Section 6.03(b), supra. If it did not wish to shoulder this particular burden of proof it was incumbent upon the State to bring the discrepancy to the attention of the trial

---

**4.** Section 6.03(b), supra, provides:

"A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

(Emphasis in the original. All other emphasis supplied by the writer of this opinion unless otherwise indicated.)

**5.** The statement of facts does not include the final arguments to the jury and thus we do not know what theory the State argued the evidence supported.

court for correction; otherwise we must assume the State acquiesced in the authorization of the jury to convict only on the theory contained in the charge. *Benson,* supra; *Ortega v. State,* 668 S.W.2d 701, at 705, n. 10 (Tex.Cr.App.1983) (Opinion on original submission); *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App.1984) (Pending on State's motion for rehearing).[6] The court of appeals was correct in concluding that sufficiency of the evidence must be measured against that theory of murder which was submitted to the jury, *viz.,* that appellant knowingly caused the death of the deceased.

■ Finally the State argues that the evidence is sufficient to prove a *knowing* killing of the deceased, and that the court

of appeals erred in holding it was not. In support of its argument the State cites cases decided before enactment of the 1974 Penal Code, *viz., Canedy v. State,* 507 S.W. 2d 743 (Tex.Cr.App.1974); *Davis v. State,* 106 Tex.Cr.R. 300, 292 S.W. 220 (1927); *Salisbury v. State,* 90 Tex.Cr.R. 438, 235 S.W. 901 (1921); *Banks v. State,* 85 Tex.Cr. R. 165, 211 S.W. 217 (1919). Upon examination of these same cases the court of appeals found "that without exception they are dependent upon a finding that the defendant possessed the requisite knowledge or the conviction is premised upon a theory not available in support of the instant jury verdict." *Garrett v. State,* 656 S.W.2d at 101. We agree with the latter part of this finding, as our exegeses of these cases in the margin will show.[7]

6. We are not persuaded that because the court's charge abstractly defined transferred intent in a paragraph (designated "3–A") appearing immediately after the paragraph applying the law of murder to the facts of the case (designated "3") the jury was therefore authorized to convict appellant upon that theory. In no way can the application paragraph (which begins, incidentally: "Now bearing in mind the *foregoing* instructions ...") be construed to refer to the abstract definition, so even "reading the charge as a whole," see *Brown v. State,* 716 S.W.2d 939, (Tex.Cr.App.1986); *Doyle v. State,* 631 S.W.2d 732 (Tex.Cr.App.1982) (Opinion on rehearing), would not inform the jury that it could convict appellant on that theory. Mere juxtaposition does not amount to authorization.

7. In *Banks v. State,* supra, the defendant was convicted of murder and sentenced to death. In essence the evidence showed that defendant and another, while walking along a dirt road running adjacent to a railroad track, fired pistols into a passing train and that a brakeman was killed by a bullet from the pistol the defendant claimed to have fired. The only contention on appeal was that the evidence failed to establish that the defendant was "guilty of that character of homicide [*viz.,* murder with malice] which should be punished by the extreme penalty of death." *Id.,* 211 S.W. at 217. However, the murder statutes had been amended, by Acts 1913, 33rd Leg., p. 238, ch. 116, to dispense with degrees of murder, and to create a single range of punishment, including death, applicable to any unlawful killing "with malice aforethought," regardless of whether that malice was express or implied. All that *Banks* may properly be read to establish, then, is that under the statute then proscribing murder an accused did not have to intend the death of the specific

deceased (or of anyone at all) for malice to be implied, and hence, for a penalty of death to be imposed. To this end the Court in *Banks* observed:

"One who deliberately uses a deadly weapon in such reckless manner as to evince a heart regardless of social duty and fatally bent on mischief, as is shown by firing into a moving train upon which human beings necessarily are, cannot shield himself from the consequences of his acts by disclaiming malice. Malice may be toward a group of persons as well as toward an individual. It may exist without former grudges or antecedent menaces. The intentional doing of any wrongful act in such manner and under such circumstances as that the death of a human being may result therefrom is malice."

*Id.,* 211 S.W. at 217. This holding was in keeping with the common law notion that malice is implied, and hence murder exists, whenever a death occurs as a result of some willful act by the accused under circumstances where he knows the act is likely to cause death or serious bodily injury. See generally, Stumberg, Criminal Homicide in Texas, 16 Texas L.Rev. 305, 312 (1938). A similar holding may be found as early as 1881, in *Aiken v. State,* 10 Tex.App. 610, although there the conviction was for murder in the second degree, and as such a penalty of death could not be, and was not, assessed.

Both *Davis,* supra, and *Salisbury,* supra, involved the firing of shots which defendants claimed were meant as warnings, with no attendant intent to kill anyone. Following *Banks,* the Court in each case held that no specific intent to kill was necessary to establish murder where one "shoots wantonly and recklessly into a car or building known to him to be occupied." *Salisbury,* supra, 211 S.W. at 902. It must be remembered that when these cases were decid-

The record is devoid of proof of any animosity between appellant and the deceased. Indeed, by all accounts they met for the first time on the night of the offense. On the other hand the record does show appellant had expressed an intent to shoot Rankin, that an argument had erupted between these two, and that appellant then obtained a rifle and shot it in Rankin's direction. The court of appeals found significant that the record does not establish appellant "knew" the deceased was in the trailer when she fired. But whether or not she knew deceased was in the trailer, we do not believe the evidence can support a finding that she acted with an awareness that death of deceased was *reasonably certain* to result. Certainly there existed a substantial risk that someone in the trailer would be killed. But there is nothing in the evidence to indicate how large the trailer was or whether appellant had any idea in what part of the trailer deceased was located when the rifle was fired. The Practice Commentary to § 6.03, supra, gives as an example of "recklessness" as defined in

subsection (c), "plinking at beer cans in a lake while water skiers go by in the center of the lake." Absent availability of the law of transferred intent in this case, the facts support no more than a finding of "conscious risk creation" very similar to the example given in the Practice Commentary.[8]

We conclude therefore that the court of appeals was correct in holding the evidence insufficient to support a verdict that appellant "knowingly" caused the death of deceased, and proceed to examine appellant's petition for discretionary review.

### APPELLANT'S PETITION

Appellant raises several contentions relevant to the observation of the court of appeals, noted *ante*, that "[t]he State is not precluded from retrying appellant on a lesser included offense of murder."

Initially appellant argues that the court of appeals erred in authorizing, if it did, a retrial upon some alternative theory of the

---

ed statutory law proscribed murder (that is, killing "with malice aforethought," Acts 1913, 33rd Leg., p. 238, ch. 116; P.C., Art. 1256 (1925)), manslaughter (more or less the equivalent of our present voluntary manslaughter, except that certain events which were or were not deemed to constitute "adequate cause" were statutorily defined; P.C., Arts. 1128–1139 (1911); P.C. Arts. 1244–1255 (1925)), and negligent homicide (P.C. Arts. 1113–1127 (1911); P.C. Arts. 1230–1243 (1925)), which was death caused by "negligence and carelessness" (P.C. Art. 1114 (1911); P.C. Art. 1231 (1925)), but with "no apparent intention to kill" (P.C. Art. 1118 (1911); P.C. Art. 1234 (1925)). Thus, what we now recognize as involuntary manslaughter under V.T.C.A. Penal Code, § 19.05(a)(1), if it was proscribed at all, had to fall under one of these categories. It seems natural then that the Court should find implied malice, and hence murder, when presented with evidence of intentional conduct which, while not meant to cause any particular death, nevertheless evinced "such utter and reckless disregard of life as shows a man to be an enemy to all mankind." *Aiken v. State*, supra, at 617. That the rule is reiterated in *Canedy v. State*, supra, only goes to disprove the thesis put forward in *Stumberg*, supra, at 312–318, that when the Legislature amended P.C., Art. 1256 (1925) by Acts 1927, 40th Leg., p. 412, ch. 274, sec. 1, to redefine murder as "voluntarily killing" another, the intent was to include only intentional killings within the parameters of that offense.

The long and short of it is that these cases do not involve, nor do they prove instructive on, the narrower question of whether on their facts a *knowing* murder was committed, as that term is defined in § 6.03(b) of the 1974 Penal Code. That a reckless disregard for life may have constituted malice under former penal codes does not mean it may also stand in place of "knowledge" so as to support a showing of murder under present § 19.02(a)(1).

8. Even if we were to hold that *Banks*, supra, is authority for the proposition that "plinking" at a passing train and thereby causing the death of some person on board unknown to the actor constitutes a "knowing" killing, the facts of the instant case are distinguishable. Here the evidence does not show that appellant intended to shoot at the trailer with utter disregard for the lives of those inside. Rather, the evidence suggests only that she intended to shoot at *Rankin*. That she also was aware, or should have been aware, of the substantial and unjustifiable risk this act posed towards those situated behind Rankin could only make her guilty of knowingly killing one of those, if she did, by a theory of transferred intent under § 6.04(b)(2), supra. Since that theory was not given to the jury, and no proper charge was given authorizing conviction for the lesser included offense of involuntary manslaughter under § 19.05(a)(1), supra, see n. 12, *post*, and none at all for negligent homicide under V.T.C.A. Penal Code, § 19.07, the State is left without a leg to stand on.

offense of murder under V.T.C.A. Penal Code, § 19.02, and maintains that one theory of murder cannot constitute a lesser included offense of another theory of murder, citing V.A.C.C.P., Arts. 37.09 and 37.-14, and *Day v. State,* 532 S.W.2d 302, 315–16 (Tex.Cr.App.1976) (Opinion on rehearing). Because we do not believe the court of appeals' observation can be construed in such a manner, we do not address this contention. It seems clear to us from the cases cited by the court of appeals that reprosecution was held to be permissible only for lesser included offenses of murder, not for murder itself, under any theory found in § 19.02, supra.

Additionally appellant contends that reprosecution for any lesser included offense in this cause is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and invites us to overrule *Moss v. State,* 574 S.W.2d 542 (Tex.Cr.App.1978) (Opinion on rehearing) and its progeny, including the cases relied on by the court of appeals in observing that appellant could be tried again on a lesser included offense, *viz., Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App.1979); *Ex parte Harris,* 600 S.W.2d 791 (Tex.Cr.App.1980); *Granger v. State,* 605 S.W.2d 602 (Tex.Cr. App.1980); *Taylor v. State,* 637 S.W.2d 929 (Tex.Cr.App.1982), to the extent they may be read to allow such reprosecution.

*Moss,* supra, involved a prosecution for burglary of a habitation. A panel of this Court on original submission found the evidence insufficient to establish burglary of a *habitation,* but nevertheless, finding that the evidence did establish the lesser included offense of burglary of a building, reformed the judgment and sentence to reflect conviction for that offense, and affirmed. On motion for rehearing, the en

banc Court determined it could not properly reform the judgment and sentence.[9] However, though conceding he could not be reprosecuted for the greater offense of burglary of a habitation, under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), rather than reversing Moss' conviction and ordering entry of an acquittal, the Court remanded the cause with the observation that nothing in those cases would prevent retrial for the lesser included offense which had been supported by the evidence at trial. In fact, as Presiding Judge Onion noted in his dissent, the Supreme Court expressly preserved this question, in footnote 7 of *Greene v. Massey,* supra. Thus, while *Burks* and *Greene* do not "prevent" the holding so summarily arrived at in *Moss,* neither do they support it. We proceed, then, to the "reasoning" of the matter called for by Presiding Judge Onion and two others.

At the outset it should be emphasized that our analysis does not involve application of the doctrine of collateral estoppel as that is embraced by the Double Jeopardy Clause. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Surely an appellate finding, such as that in *Moss,* that the evidence fails to sustain a conviction for lack of proof of an aggravating element, but would have been sufficient to establish the lesser, nonaggravated offense cannot bar reprosecution of the nonaggravated offense on the ground that some critical element of proof as to that offense has been decided against the State in the first prosecution. Rather, our analysis begins and ends with the literal language of the Fifth Amendment, that no person "be

---

9. On motion for rehearing before the Court en banc Moss argued that because a jury had assessed his punishment it was improper for this Court to reform the judgment and sentence as it had done in *Jones v. State,* 532 S.W.2d 596 (Tex.Cr.App.1976), wherein the trial court had assessed punishment. Speaking through Judge Dally, we held it improper for this Court to reform the judgment *regardless* of whether judge or jury had assessed the punishment, since either way this Court would have to indulge the presumption that the same term of

punishment would be assessed even though the range of punishment for the lesser offense was lower. Oddly enough, the Court then observed that in *Jones,* supra, "we should have remanded the cause to the trial court to reassess punishment." Under *Burks* and *Greene* a defendant tried before a trial judge should be no less entitled to an acquittal upon an appellate finding of insufficient evidence to support the verdict than a defendant found guilty by a jury on what is determined on appeal to be insufficient evidence.

subject for the *same* offence to be twice put in jeopardy of life or limb."

The Fifth Amendment prohibition against double jeopardy was made fully applicable to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969). Thus the State is subject to the three separate guarantees recognized to be embodied in the Double Jeopardy Clause, *viz.:* protection against reprosecution for the same offense following an acquittal, against reprosecution for the same offense following a conviction, and against multiple punishments for the same offense. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

In *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) the Supreme Court observed:

"The primary goal of barring reprosecution after acquittal is to prevent the State from mounting successive prosecutions and thereby wearing down the defendant. As was explained in *Green v. United States,* 355 U.S. 184, 187–188, 2 L.Ed.2d 199, 78 S.Ct. 221, 77 Ohio L.Abs. 202, 61 A.L.R.2d 1119 (1957):

'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "

*Id.,* 78 S.Ct. at 1813, 2 L.Ed.2d at 324.

It was established beyond peradventure in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) that upon conviction or acquittal *in a trial court* for a given offense the Double Jeopardy Clause bars retrial for the "same" offense, and that determination of whether a second statutorily defined offense, different from that upon which the accused was originally tried, is nevertheless the "same" so as to bar subsequent prosecution for that offense is made through application of the rule stated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

"... that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [10]

See *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982). The question before us now, left open by *Burks* and *Greene,* is whether the Double Jeopardy Clause also bars reprosecution for a lesser, "same" offense, applying the *Blockburger* test, when acquittal for the greater offense follows an *appellate* determination that the evidence was legally insufficient to support that conviction.

Distinguishing reversals for "trial error," after which retrial is permissible, from reversals following an appellate finding of insufficient evidence, the Supreme Court in *Burks* opined:

"[W]hen a defendant's conviction has been overturned due to a failure of proof at trial ... the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. [footnote omitted] Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter

---

**10.** Expressly reserved in *Brown v. Ohio,* supra, was the question "whether the repetition of proof required by the successive prosecutions against Brown would otherwise entitle him to the additional protection offered by *Ashe [v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ] and *[In re] Nielsen* [131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) ]." 432 U.S. at 166, n. 6, 97 S.Ct. at 2226, n. 6, 53 L.Ed.2d at 195, n. 6. See *Ex parte McWilliams,* 634 S.W.2d 815 (1982) (Clinton, J., dissenting to denial of leave to file appellant's motion for rehearing).

how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." (Emphasis in the original.)

437 U.S. at 16, 98 S.Ct. at 2149-50, 57 L.Ed.2d at 12-13. Thus the Court concluded that the State cannot constitutionally reprosecute a defendant for the identical statutory offense following an appellate finding of insufficient evidence.

We fail to perceive anything inherent in the reasoning of the Supreme Court in *Burks* to preclude application of the *Blockburger* test to determine whether reprosecution for the "same" offense would be barred under the Double Jeopardy Clause following an appellate reversal for insufficient evidence. Since a jury's verdict of acquittal at the trial level bars retrial of any lesser included offense which constitutes the "same" offense under *Blockburger*, as *Brown v. Ohio,* supra, clearly establishes, it is likewise difficult to conceive any greater interest society has in reprosecuting a defendant for that lesser included offense simply because it is an appellate court that has found the evidence lacking to support conviction for the greater offense. That the same evidence may well prove sufficient to support a verdict of guilt of the lesser offense does not provide a justification for the State to try the defendant a second time for the "same" offense in order to obtain a conviction.

Moreover, none of the recognized exceptions to the rule in *Brown* appears to apply to this cause. That any event necessary to establishing a lesser included offense could have occurred or been discovered since appellant's first trial, even if conceptually possible, is highly unlikely. *Jeffers v.*

*United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Nor did any action on appellant's part prevent prosecution of greater and lesser offenses within a single proceeding, as was the case in *Jeffers.*[11] Though retrial upon the identical statutory offense may be permitted, even absent application of the "manifest necessity" standard, when mistrial is declared at the appellant's behest, *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), this exception clearly is not applicable here. Lastly there is the concept of continuing jeopardy, whereby an accused may be tried a second time following appellate reversal on the basis of trial error of a conviction for a lesser offense from a jury which "impliedly" acquitted him of the greater offense. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). As to the lesser offense, jeopardy has "continued" in that the accused has asserted some defect in the first prosecution, not implicating sufficiency of the evidence to establish that lesser offense. Balancing the fact of the accused's "limited waiver" of his interest in not being retried against "fairness to society," and "lack of finality" in the proceeding, *id.,* 398 U.S. at 329, n. 4, 90 S.Ct. at 1761, n. 4, 26 L.Ed.2d at 305, n. 4, the Court has held the accused subject to reprosecution in this limited context for the lesser included offense.

In the instant cause the proceeding was all but final as soon as the court of appeals determined that the evidence was insufficient to support the conviction for murder, subject only to this Court's discretionary power to review that determination. Because the jury expressly found appellant guilty of *murder* in its verdict, neither this Court nor the court of appeals is authorized to reform the judgment and sentence to reflect conviction for a lesser included

11. To be remembered, however, is that "it is settled law in this State that regardless of allegations in a charging instrument the consequence of a general verdict of guilt, as all predecessors to Article 37.07, V.A.C.C.P., mandated, is but one conviction and one punishment. *Drake v. State,* [686 S.W.2d 935 (Tex.Cr.App.1985) ]." *Ex parte Siller,* 686 S.W.2d 617 (Tex.Cr.App.1985). Thus, presumably what was found in *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425

(1984) *not* to violate prohibition against double jeopardy, *viz.,* for the State to proceed to trial on two counts of an indictment after appellant had plead guilty to two other counts of the same indictment which charged lesser included offenses, would nevertheless be prohibited in Texas as a matter of state common law, "soon incorporated into statutory law for criminal actions." *Siller,* supra, at 619.

offense under Article 44.24(b), V.A.C.C.P., since "reformation of judgment and sentence may be done only to cause those instruments to reflect the true finding of the fact finder when such a finding is reflected in the verdict or, in a bench trial, the pronouncement of the court's finding." *Milczanowski v. State*, 645 S.W.2d 445, 447 (Tex.Cr.App.1983). All that remains upon remand is to enter judgment of acquittal. But for this essentially ministerial act, there is no lack of finality in the judgment, and hence no basis to apply continuing jeopardy.

What, then, of fairness to society? It is true that when an appellate court determines insufficiency of the evidence and orders entry of a judgment of acquittal the jury is effectively deprived of the opportunity to consider any lesser included offenses raised by the evidence and properly submitted in the court's charge.[12] But this does not mean the State has not had its "one fair opportunity to offer whatever proof it could assemble." Even if the evidentiary deficiency in the proof of the greater offense lies *merely* in a failure to prove the additional "facts required to establish the commission of the [greater] offense," or the greater culpable mental state, or the proof establishes only an attempt at commission of the greater offense, or a less serious injury or risk of injury than that required of the greater offense, Article 37.09, V.A.C.C.P., in never-

theless having *proceeded* on the greater offense, as well as any properly authorized lesser included offenses, the State has risked the possibility of obtaining a verdict on the greater offense, which proves, on appellate review, to be unsupported in the evidence. Having thus overreached, as it were, the State cannot be heard to complain that it has not had its one bite at the apple. No consideration of "fairness to society" can justify the additional "embarrassment, expense and ordeal" to an accused under these circumstances.

Finally, it would be anomalous to hold that in asserting his Fourteenth Amendment right to be convicted only upon a verdict for which every essential element has been proven beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), appellant has "waived" his Fifth Amendment right to be free of the onus of successive prosecutions for what constitutes the same offense.

We therefore hold that following an appellate reversal of a conviction on the basis of insufficient evidence to support the verdict, the Double Jeopardy Clause bars reprosecution for any lesser included offense which is the "same" as the greater, acquitted offense under the test in *Blockburger*. To the extent that they conflict with our holding today, *Moss v. State*, supra, and its progeny are overruled.[13]

---

**12.** In the instant cause the lesser included offenses of voluntary and involuntary manslaughter were charged to the jury, albeit in defective forms. Like the paragraph applying the law of murder to the facts, the paragraph applying the law of voluntary manslaughter failed to apply transferred intent. And though the jury was supplied with the statutory definition of "reckless" in the abstract statement of the law of involuntary manslaughter, in applying that law to the facts, the charge again required the jury to find appellant "knowingly" caused the death of the deceased. Thus, under every paragraph authorizing conviction in this cause appellant would have to be acquitted, since, as we have affirmed *ante*, the evidence did not establish a knowing killing of the deceased.

**13.** In *Granger* and other followings of *Moss*, for insufficient evidence that a homicide was committed in the course of committing robbery the Court orders an acquittal of capital murder, but then gratuitously states that appellant may be

"retried for the lesser included offense of murder," citing *Granger*. However, *Granger* and its precursors back to *Moss* are long on rote but woefully short on analysis. As we have pointed out *ante*, the holding on rehearing in *Moss* is based solely on its own ipse dixit that *Burks* and *Greene* do not "prevent" retrial for burglary of a building. Thus the *Moss* majority, over protests by Presiding Judge Onion joined by two others that its decision "should be made with reasoning, but the majority declines to reason," simply ruled as it willed.

Moreover, because *Moss* and the others, particularly *Granger*, were decided before *McWilliams*, supra, the Court was not called on to examine principles of jeopardy law and the rule of *Blockburger v. United States* since adopted in *McWilliams*. In that sense *Moss* and progeny are inapposite.

Given the *McWilliams* formulation and *Brown v. Ohio*, supra, therefore, it may no longer be correctly asserted generally that an appellant

Of course, we do not know for what statutory offense, if any, the State may attempt to indict appellant subsequent to our ruling in this cause. Therefore, resolution of whether a particular offense is the "same" as that for which we now order entry of acquittal must await, at the earliest, indictment or information by the State and plea in bar by appellant, or pretrial habeas corpus action. See *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982).

The judgment of the court of appeals is affirmed in part and reversed in part. The cause is remanded to the trial court for entry of a judgment of acquittal.

ONION, P.J., concurs in result.

W.C. DAVIS, McCORMICK and WHITE, JJ., dissent.

TEAGUE, Judge, dissenting.

### INTRODUCTION

This Court's records reflect that this is the second time that this cause has been before this Court; each time on the State's petition for discretionary review.

### WHAT I WOULD HOLD

For reasons I will state, this Court should again remand this cause to the San Antonio Court of Appeals, for that court to consider *only* those grounds of error that Joyce Lee Lewis Garrett, hereinafter referred to as the appellant, timely presented to that court prior to its decision of *Garrett v. State*, 624 S.W.2d 953 (Tex.App.—San Antonio 1981), becoming final.

### THE MAJORITY'S HOLDING

The majority opinion, however, in the first part of its opinion, declines to take my recommended action. It reviews the decision of the court of appeals that addressed a ground of error that had not been presented to that court when the cause was first pending before that court, to which action I am compelled to respectfully dissent for reasons that I will soon state.

who is ordered acquitted of a greater offense for insufficient evidence may be tried for some specified lesser included offense, for we cannot

### IS THE COURT OF APPEALS GUILTY OF CONTEMPT?

The majority opinion holds that there was nothing wrong with the court of appeals refusing and failing to obey this Court's decree when it first remanded this cause to that court, "for consideration of appellant's grounds of error." *Garrett v. State*, 642 S.W.2d 779 (Tex.Cr.App.1982). The court of appeals did not obey this Court's mandate; opting instead to review a ground of error that was not extant when the case was first pending before that court. Is this not contemptuous conduct? I think so. If this Court's express orders are not to be carried out by a court of appeals, then, pray tell, how can we expect our citizenry to obey *any* court's orders? Notwithstanding this Court's first order of remand, this Court today grants the San Antonio Court of Appeals permission to make a *de novo* review of the appellant's cause; just like the case had never been before this Court. Cf. *Laday v. State*, 685 S.W.2d 651, 653 (Tex.Cr.App.1985) (Clinton, J., concurring opinion); *Turner v. State*, 662 S.W.2d 357 (Tex.Cr.App.1984) (Clinton, J., dissenting opinion.) Also see *Gambill v. State*, 692 S.W.2d 106 (Tex.Cr.App.1985), in which this Court's members voted unanimously not to consider on rehearing a new ground of error that had not been presented in the original petition for discretionary review. In light of today's decision, I suppose that the defendant in *Gambill*, supra, can now file a motion or amended motion for rehearing with that court of appeals and present his new ground of error. The fact that the "term of court" might have expired should not inhibit the defendant. See *Ex parte Williams*, 704 S.W.2d 773 (Tex.Cr.App., 1986). Of course, when you are the assertive and aggressive majoritarian regime, rules and principles of law mean whatever you want them to mean.

### THE INDICTMENT IN THIS CAUSE

The indictment in this cause alleges that on or about September 22, 1977, the appel-

know whether on trial of the latter the evidence will show that it is *not* the "same" offense as the former.

lant knowingly caused the death of an individual, Betty Lynn Bennett, by shooting Bennett with a gun. This alleged the offense of murder as proscribed by V.T.C.A., Penal Code, Section 19.02(a)(1).

## THE STATE'S THEORY OF THE CASE

The State's theory of the case was that the appellant was responsible for the death of Bennett because of her acts toward a third person, Bill Rankin.

## THE FACTS OF THE CASE

The facts of the case reflect that the appellant, while engaged in a heated argument with Bill Rankin outside of the residence (a trailer home) of Betty Lynn Bennett and her family, fired a rifle one time. The bullet from the rifle traveled into the trailer home in which Bennett was then situated, striking Bennett, which caused her death.

## THE LAW THAT GOVERNS TRANSFERRED INTENT

V.T.C.A., Penal Code, Section 6.04(b) provides: "A person is ... criminally responsible for causing a result if the only difference between what actually occurred and what he intended, contemplated, or risked is that: (2) a different person ... was injured, harmed, or otherwise affected." I believe that the most favorable facts toward the verdict in this cause nicely fit the statutory definition of transferred intent. However, the law of transferred intent was never specifically applied to the facts of this case in the trial court's charge to the jury. The appellant, however, never complained of such omission from the charge by either objecting to the charge or submitting a correct requested charge. The jury, however, was given in the abstract the statutory definition of the law of transfered intent. Also see V.T.C.A., Penal Code, Section 6.04(a).

## WHAT THE COURT OF APPEALS DID THE FIRST TIME AROUND

On direct appeal to the San Antonio Court of Appeals, the appellant presented three grounds of error, none of which claimed that the evidence was insufficient to support the jury's verdict. In the grounds of error that the appellant presented, she only asserted jury misconduct and trial court error relating to the alleged jury misconduct. The court of appeals, however, did not review any of her grounds of error. Instead, it held that because the jury charge failed to apply the law of transferred intent to the facts of the case this rendered the charge fundamentally defective, and then reversed the trial court's judgment of conviction. The cause was then remanded to the trial court for a new trial. *Garrett v. State*, 624 S.W.2d 953 (Tex.App.—San Antonio 1981).

This holding did not set too well with the great State of Texas as it thereafter petitioned this Court to review the decision of the court of appeals. This Court granted the State's petition, but did so *only* to review the holding of the court of appeals that the jury charge was fundamentally defective.

## WHAT THIS COURT DID TO THE COURT OF APPEALS' DECISION

Contrary to the court of appeals, this Court held that the trial court's failure to apply in the charge to the jury the law of transferred intent to the facts of the case was not fundamental error. It then reversed the judgment of the court of appeals and remanded the cause to that court "for consideration of appellant's grounds of error." *Garrett v. State*, 642 S.W.2d 779 (Tex.Cr.App.1982).

## APPELLANT FILES A MOTION FOR REHEARING

The appellant, through counsel, filed a motion for rehearing in this Court, but this Court denied same without written opinion or comment.

In the motion for rehearing that counsel for the appellant filed on behalf of the appellant, he asserted therein for the first time on appeal that the evidence adduced at trial was insufficient to sustain the jury's verdict finding the appellant guilty of murder.

## WHAT THE COURT OF APPEALS DID ON REMAND

After the cause was returned to the court of appeals, pursuant to our order of remand, "for consideration of appellant's grounds of error," but contrary to said order, the court of appeals did not review the appellant's grounds of error that were extant when the cause was first pending in that court. Instead, that court chose to review a new ground of error that was presented in an amended brief filed by counsel for the appellant, which ground of error went to evidentiary insufficiency. The court of appeals found that the evidence was insufficient to support the jury's verdict finding the appellant guilty of murder and ordered the trial court to enter a judgment of acquittal. *Garrett v. State,* 656 S.W.2d 97 (Tex.App.—San Antonio 1983). However, it also gratuitously stated the following: "The State is not precluded from retrying appellant on a lesser included offense of murder. (Citations omitted.)" (101–102.)

## HERE COMES THE GREAT STATE OF TEXAS AGAIN

It is almost unnecessary to state that what the court of appeals did on remand really upset the great State of Texas; it filed another petition for discretionary review, asserting therein that the jurisdiction of the court of appeals was limited to this Court's order of remand and that the evidence was sufficient to sustain the conviction. Interestingly, the appellant also was not pleased with the opinion of the court of appeals, as she, too, filed a petition for discretionary review asserting therein that the court of appeals should have, in addition to holding that the evidence was insufficient to sustain the jury's verdict finding her guilty of murder, also held that the State was barred from reprosecuting her for any lesser included offense of murder. We granted both petitions.

## I AGREE WITH THE STATE AND PARTLY AGREE WITH THE APPELLANT

Given the wording of this Court's order of remand, I agree with the State and would find and hold that because of the wording of this Court's order of remand, the court of appeals was without authority to consider the issue of the sufficiency of the evidence that was presented in her belatedly presented ground of error.

The majority opinion of this Court, however, disagrees with both the great State of Texas and me, and holds, inter alia, notwithstanding the terms of this Court's order of remand, that the court of appeals was authorized to consider the appellant's belatedly presented ground of error. In so holding, the majority opinion unfortunately fails to construe the terms of this Court's order of remand. To me, as I will soon demonstrate by case law, the meaning of the wording of this Court's order of remand is the key as to whether the court of appeals had authority to permit the appellant to file an amended ground of error that was not extant when the cause was previously before that court. Because of the wording of our order, I would hold that the court of appeals was without authority to decide the issue whether the evidence is sufficient to sustain the jury's verdict.

However, I do agree, but for different reasons, with the majority opinion's holding that there was a fatal variance between the allegata and the court's charge to the jury in this cause, i.e., the evidence is insufficient to sustain the jury's verdict finding the appellant guilty of the offense of murder because of what was alleged and what the jury was instructed that it had to find before returning a verdict of guilty against the appellant, in conjunction with the State's proof.

In light of the fact that I would hold that the court of appeals did not have authority to reach this issue, I would relegate the appellant to pursuing this issue via the provisions of Art. 11.07, V.A.C.C.P. However, there is a legal way to consider this issue at this time. In order to reach the appellant's claim that the evidence is insufficient, I would treat appellant's petition for discretionary review as an application for post-conviction writ of habeas corpus.

See and compare *Basaldua v. State*, 558 S.W.2d 2 (Tex.Cr.App.1977).

## THE FIRST PART OF THE MAJORITY OPINION IS FILLED WITH MAGIC

In holding that the court of appeals had authority to consider the appellant's belatedly urged ground of error, that was not raised on direct appeal or in a motion for rehearing when the cause was originally pending before the court of appeals, I find that the majority opinion closely resembles one of the great Houdini's magical acts; now you see it, now you don't.

To warm up the audience, the majority opinion first tells it about some well known general principles of law, namely, this Court's power and authority to review decisions of the court of appeals; this Court's power and authority to remand cases to courts of appeals; jurisdiction of courts of appeals over direct appeals; the fact that if this Court reverses the judgment of a court of appeals and the court of appeals did not review all of the grounds of error raised on direct appeal, it will remand the cause to the court of appeals to review those grounds of error; and the fact that once this Court remands a cause to a court of appeals, it loses jurisdiction over the cause.

Then comes the sleight-of-hand trick. Without citation of any valid authority, the majority opinion states: "When jurisdiction over the cause is restored by remand neither statutes nor scanty prior decisions cited above dictate that the court of appeals is limited in its renewed appellate consideration of the cause to the terms of our order of remand."

And now we remove the cape that covers the cage. Do you see one or two lions when before you only saw an empty cage? "Indeed, an 'order' that the court of appeals 'consider appellant's grounds of error' in a criminal case is superfluous, for such is its function, and according to Article 40.09, Sec. 9 on direct appeal an appellate court is obliged to consider every ground of error it can 'identify and understand,' *Ben-Schoter v. State*, 638 S.W.2d 902 (Tex.Cr.App.1982), especially one that might cause reversal of a judgment of con-

viction." You can actually now see two lions, can't you? The first part of the statement is one lion and the second part is the other lion.

Ah, so you really enjoyed that magical feat, did you? Well, here comes another one. "Where not inconsistent Tex.Cr.App. Rule 211 incorporates Rules of Civil Procedure 'to govern proceedings in the court of appeals in criminal cases.'"

Now we put the cape over the empty cage. "Pursuant to Rule 431, T.R.Civ.R. in effect when the San Antonio Court of Appeals rendered its decision, a brief may be amended or supplemented at any time when justice requires upon such terms as the court of appeals may prescribe [see now Rule 414(n), T.R.Civ.P. and prospective Rule 64(*o*), T.R.App.R.]." Now we again remove the cape from the cage. How many lions do you now see? One or two? You should actually see three because, in addition to the above, we learn that "A routine general remand should not foreclose availability of applicable rules of procedure. Thus, sufficiency of the evidence was properly made a ground of error in the court of appeals." Here is the third lion: "[F]or this Court to issue an 'order of remand' to restrict the court of appeals in renewed exercise of its own jurisdiction, power and authority would seem to be an impermissible and unwarranted abridgment of constitutional grant of same to courts of appeals by Article V, Sec. 6, Constitution of Texas, as implemented by Articles 4.03, 44.24 and 44.25, V.A.C.C.P."

## WHICH COURT, THIS COURT OR THE SAN ANTONIO COURT OF APPEALS, IS REALLY CONTEMPTUOUS?

When I asked whether the court of appeals was guilty of contemptuous conduct, see *ante*, by the above statement, the majority opinion causes me to now ask: By the majority opinion, if this Court, in a remand order to a court of appeals, restricted what the court of appeals might review on remand, would this Court be guilty of contemptous conduct?

WE DO A DISSERVICE TO THE COURTS OF APPEALS BY NOT CLARIFYING THEIR AUTHORITY TO ACT AFTER A CASE IS REMANDED FROM THIS COURT TO AN INTERMEDIATE COURT OF APPEALS

My research reflects or indicates that this is the first time that the issue of just what authority an intermediate court of appeals has to act after a cause has been remanded to that court by this Court has presented itself before this Court.

Instead of intelligently addressing this issue, the majority prefers instead to engage in magical tricks with the law.

By what I have said and what I am about to state, regardless of what the San Antonio Court of Appeals might have concluded from this Court's summary denial of the appellant's motion for rehearing, I want to make it absolutely clear that what is before us today does not concern either the situation where this Court has summarily refused without opinion or comment a petition for discretionary review or summarily denied without opinion or comment a motion for rehearing, because neither has any precedential value, nor does what is before us concern what the court of appeals might have done on its own motion when the cause was originally pending before that court, before its first judgment became final. See, e.g. *Shannon v. State*, 693 S.W.2d 390 (Tex.Cr.App.1985); *Williams v. State*, 692 S.W.2d 100 (Tex.Cr.App.1985); *Hill v. State*, 690 S.W.2d 900 (Tex.Cr.App. 1985); *Gonzales v. State*, 689 S.W.2d 231 (Tex.Cr.App.1985); *Sheffield v. State*, 650 S.W.2d 813 (Tex.Cr.App.1983). Also see *Laday v. State*, 685 S.W.2d 651, 653 (Tex. Cr.App.1985) (Clinton, J., concurring opinion); *Turner v. State*, 662 S.W.2d 357 (Tex. Cr.App.1984) (Clinton, J., dissenting opinion); *Lambrecht v. State*, 681 S.W.2d 614 (Tex.Cr.App.1984); *Noel v. State* (Tex.Cr. App., No. 827–83, delivered March 14, 1984). But cf. *Lopez v. State* (Tex.Cr.App., No. 509–83, March 28, 1984); *Todd v. State*, 661 S.W.2d 116, 118 (Tex.Cr.App. 1983); *Howeth v. State*, 645 S.W.2d 787 (Tex.Cr.App.1983).

Given the circumstances of this cause, I am compelled to hold that when this Court denied the appellant's motion for rehearing without opinion or comment such ruling had no precedential value whatsoever. It certainly did not constitute an endorsement or approval by this Court of the appellant's allegation that the evidence was insufficient to support the verdict of the jury, as the court of appeals took the liberty to conclude.

WHAT HAS LONG BEEN THE LAW OF THIS STATE

What the majority of this Court refuses to accept in this cause is the well known legal axiom that after a cause is remanded from this Court to the court of appeals, following disposition of a petition for discretionary review, an intermediate appellate court has no lawful authority or power to exceed the terms of this Court's remand order. To allow an intermediate appellate court to do otherwise is to run afoul of the principle expressed in *Gambill*, supra: "Belatedly to present new grounds in such piecemeal fashion is inimical to rights of an opposing party and valid interests of this Court in orderly procedure and judicial economy." (107).

When this Court grants a petition for discretionary review, the appropriate court of appeals loses authority and power to do anything further with the cause until and unless we remand the cause to that court for it to do something further. If we do so, the court of appeals' authority and power to thereafter pass upon issues is circumscribed or limited by the express language of our order remanding the cause. In this instance, the San Antonio Court of Appeals was expressly told that it was to consider "appellant's grounds of error." It declined to do this, opting instead to review a ground of error that was not extant when this Court entered its order of remand. Nor did the appellant, in her motion for rehearing, seek any clarification of this Court's order of remand.

WAS THIS COURT'S ORDER OF REMAND OBVIOUSLY CLEAR?

In this regard, if it obviously appears from a fair and reasonable construction of

the language employed in the opinion or decision of the higher court remanding the cause to the lower court, that the issues are limited on remand, then the lower court should consider only those issues, and no others, sua sponte or otherwise, and it matters not that the lower court may doubt the propriety of the higher court's order, nor that it might differ with its opinion, decision, or conclusions. This has long been the law of this State, at least until today when this Court first came into contact with the meaning of one of its remand orders. See *Cole v. Estell*, 6 Tex. 175 (Tex.Sup.Ct.1887). Also see *Price v. Gulf Atlantic Life Ins. Co.*, 621 S.W.2d 185 (Texarkana Civ.App.—1981), (No writ history); *Kelley Const. Co. et al. v. Page*, 269 S.W.2d 689 (Waco Civ.App.—1954) (No writ history)); *Texon Drilling Co. et al. v. Elliff et al.*, 216 S.W.2d 824 (San Antonio Court of Civil Appeals 1948) (No writ history).

Interestingly, in *First State Bank of Bishop v. Grebe*, 162 S.W.2d 165, 168 (San Antonio Court of Civil Appeals 1942, ref. w.o.m.), the predecessor to the San Antonio Court of Appeals stated the following: "[E]very order of an appellate court reversing and remanding a cause ... carries with it the necessary instruction, whether expressed or not, that all further proceedings in the case ... must be 'consistent with the opinion' of the reversing court; that qualification is understood, is implied by necessity, so that, at least usually, it adds nothing to the result to write it into the opinion or include it in the mandate."

And yet, in this instance, the San Antonio Court of Appeals reasoned that it could consider the belatedly urged ground of error because of the provisions of Art. 44.33, V.A.C.C.P., also see Rule 211, Tex.Cr.App.R., which expressly provides that after the record is filed in the appellate court the parties may file such supplemental briefs as they may desire *before* the case is submitted to the court. But, as I have tried to point out, the ground of error was not presented to that court *before* the case was submitted to that court; it was submitted to that court *long after* that court had lost jurisdiction over the case.

After this Court granted the State's petition for discretionary review the first time, the court of appeals no longer had jurisdiction over the cause; jurisdiction over the cause was then vested solely in this Court. However, once this Court's decision remanding the cause to that court became final, jurisdiction over the cause was automatically vested in the court of appeals and no other court, *but only to the extent of the terms of our order of remand.* In this instance, the court of appeals erred in exceeding the terms of our remand order.

I believe that this Court's remand order sufficiently directed the San Antonio Court of Appeals to consider only the grounds of error that were extant when the cause was originally pending in that court, and I have found no exception in our law that might have warranted the court of appeals to exceed the terms of our remand order. If the phrase "for consideration of appellant's grounds of error" does not limit itself to those grounds of error that were extant when the cause was pending in the court of appeals, then I believe the majority should get out its magic wand and explain why this is not so.

Therefore, in this instance, I would hold that the court of appeals was not authorized to consider appellant's belatedly urged contention that the evidence was insufficient, and, without more being present, I would reverse the judgment of the court of appeals, and remand this cause to that court for it to consider only those grounds of error that the appellant had timely presented to that court prior to its opinion and decision dated December 2, 1981.

## I WOULD TREAT THE APPELLANT'S P.D.R. AS AN ORIGINAL POST-CONVICTION APPLICATION FOR HABEAS CORPUS AND HOLD THAT THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE VERDICT OF THE JURY

Although I do not agree with all of the reasons the majority opinion gives, or what the court of appeals stated, why the evi-

dence is insufficient, I, nevertheless, agree, based upon this poorly developed factual record, that the evidence is insufficient to sustain the verdict of the jury finding the appellant guilty of murder.

Sufficiency of the evidence has now risen to constitutional dimension and may be attacked by way of post-conviction collateral attack, where the plea was not guilty. See *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Cf. *Ex parte Williams,* 703 S.W.2d 674 (1986). To relegate this appellant to challenging the sufficiency of the evidence by way of Art. 11.07, V.A.C.C.P., would not cause the record to become better factually, and would certainly not promote judicial economy. Thus, but contrary to the majority opinion, I would consider the sufficiency challenge as though it had been presented to this Court pursuant to the provisions of Art. 11.07, supra.

I need not set out my reasons why I agree with the majority opinion's bottom line holding that the evidence is insufficient to sustain the verdict of the jury, because that would only elongate this opinion. I will simply refer the reader to what was alleged against the appellant, the charge to the jury, *and the poorly developed facts by the prosecution,* as they are set out in the majority opinion and the opinion by the court of appeals.

### WHAT SHOULD OCCUR WHEN THIS CAUSE ARRIVES BACK IN THE TRIAL COURT?

I find that the majority opinion unnecessarily spends much time explaining why *Moss v. State,* 574 S.W.2d 542 (Tex.Cr.App. 1978), and its progeny should be expressly overruled. Although I agree that *Moss,* supra, and its progeny, should be expressly overruled, I do not believe that this is the opportune time to discuss that issue and make that decision. Also see the concurring opinion that I filed in *Ibanez v. State,* 749 S.W.2d 804 (Tex.Cr.App.1986). Because I am not prescient, I am unable to state what, if anything, might happen when the cause arrives back in the trial court. Therefore, to address this unknown is to

only give real meaning to the word "dicta," because in this instance we are not dealing with prohibiting the State from retrying the appellant for the lesser offense of murder.

### CONCLUSIONS

For the above reasons, I respectfully dissent to this Court upholding the court of appeals decision to review the sufficiency ground of error. However, for reasons I have stated, I would construe the appellant's petition for discretionary review as an original post-conviction application for writ of habeas corpus, would hold that the evidence is insufficient to sustain the jury's verdict, and would then grant the writ and remand the cause to the trial court with instructions to enter a judgment of acquittal as to the offense of murder.

Further, I saith not at this time.

### OPINION ON STATE'S MOTION FOR REHEARING

CAMPBELL, Judge.

We granted argument on the State's motion for rehearing in order to address two grounds:

■ The majority opinion erred in reversing appellant's murder conviction on the ground that there was legally insufficient evidence to support the same because:

(a) the law of transferred intent was effectively submitted to the jury;

(b) the law of transferred intent could be used to support the jury's verdict; and

(c) a *knowing* killing of the deceased was not the only theory of murder submitted in the trial court's charge to the jury.

■ Where a defendant is acquitted of a greater offense, either by verdict of a jury or by finding of an appellate court that the evidence is legally insufficient to sustain a conviction of that offense, nothing in the Double Jeopardy Clause of the Federal Constitution forbids a second trial of the defendant for a lesser included offense where there is no expressed or

implied finding that the evidence is insufficient to support a conviction for the lesser included offense.

We hold that the theory of transferred intent was not adequately before the jury and that our prior opinion, to the extent that it discussed double jeopardy, was advisory.

## I

In its motion for rehearing, the State argues that this case is controlled by *Romo v. State*, 568 S.W.2d 298 (Tex.Cr. App.1978) and *Garrett v. State*, 642 S.W.2d 779 (Tex.Cr.App.1982) (*Garrett I*). In *Romo*, we rejected a challenge that an abstract instruction on the law of parties, without an application of that abstract law to the facts of the case, was fundamental error. Because an instruction on the law of parties allows the State to convict on less evidence than if a defendant is charged as a principal, we held that a defendant might *choose* not to pursue his right to an application of the law to the facts. By eschewing the parties application, the appellant in *Romo* would force the State to convict him on a theory of principal culpability. The State's brief notes that, after reaching this result in *Romo*, supra, we later judged the sufficiency of the evidence in terms of "party" culpability. The State utilizes this result to infer that the jury was authorized to convict under the law of parties. The State particularly urges this argument by highlighting our reliance on *Romo* in *Garrett I*.

While the State's observation is well taken, it fails because it relies on the conclusion that the abstract charge on the law of transferred intent was sufficient to put that theory before the jury. Even a cursory reading of *Garrett I*, supra, belies this point:

A charge on transferred intent is by its nature favorable to the State and detrimental to the defendant. With the provisions of Sec. 6.04(b)(2) omitted from the charge, the prosecution is presented with the greater burden of proving a "knowing" act in which the defendant was aware that her conduct was reasonably certain to cause the *actual* result rather than merely the desired result. V.T.C.A. Penal Code, Sec. 6.03(b).

It would seem quite possible that a defendant might intentionally fail to object to a jury charge which omits a proper application of transferred intent in order to require the State to meet this greater burden.

*Garrett I*, supra at 781.

The inapplicability of the State's argument with respect to *Garrett I* does not vitiate its weight in regard to *Romo*. In *Romo*, this Court refused to label an abstract instruction which would have increased the State's burden of proof as fundamental error. We did so on the theory that a defendant could elect to waive his right to have the law of parties applied to the facts, thus forcing the State into meeting a more onerous burden of proof. When this Court examined the sufficiency of the evidence to support the defendant's conviction in *Romo*, we measured the evidence in terms of the defendant's culpability as a party. This treatment of the sufficiency point renders the "election" rationale a mere legal fiction. *Garrett I* does not adopt the implicit "test" for sufficiency used in *Romo*. It is patently unfair and irrational to find the charging error harmless because it raises the burden of proof and then ignore that raised burden when measuring the sufficiency of the evidence.

A different concern raised by *Garrett II*, although it is not mentioned in the State's motion for rehearing, is its possible effect on subsequent cases. A close inspection of *Garrett II* reveals that it is the product of an unusual set of circumstances, illustrating the tension between pre- and post-*Almanza*[1] analysis, which have created a result that appears to be something it is not. At first blush, this case seems to require that a measurement of the sufficiency of the evidence be limited to a sole consideration of the application paragraph of the jury charge. This would be misapplication of the rule enunciated in *Boozer v. State*, 717 S.W.2d 608 (Tex.Cr.App.1986); *Ortega*

---

1. *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App. 1985).

*v. State,* 668 S.W.2d 701 (Tex.Cr.App.1983); and *Benson v. State,* 661 S.W.2d 708 (Tex. Cr.App.1983). *Boozer, Ortega,* and *Benson* hold that sufficiency of the evidence be measured against the jury charge, which we interpret to mean the entire charge.[2]

## II

■ The Court of Appeals, after holding that the evidence was insufficient to support appellant's conviction for the offense of murder, included the following statement in its opinion: "The State is not precluded from retrying appellant on a lesser included offense of murder." *Garrett v. State,* 656 S.W.2d 97, 101–02 (Tex.App.— San Antonio 1983). In *Garrett II,* appellant argued that the Court of Appeals incorrectly authorized a trial on any lesser included offenses. We responded to that argument with an extensive discussion of the law concerning double jeopardy, concluding that *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) contains the proper standard for deciding whether a defendant may be tried for a particular lesser included offense following acquittal on the greater offense. However, we did not apply the *Blockburger* test to the instant case because we found its application premature. *Id.* at 795. Upon reconsideration, we find that our discussion of double jeopardy law in response to appellant's petition for discretionary review was unnecessary.

The Texas Constitution vests judicial power over criminal cases in the Court of Criminal Appeals and the courts of appeals. Tex. Const. art. V, §§ 1 & 5. " 'Judicial power' is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision." *Morrow v. Corbin,* 122 Tex. 553, 558, 62 S.W.2d 641, 644 (1933). Judicial power does not include the power to issue advisory opinions. *Id.* at 562, 62 S.W.2d at 646; see also *Firemen's Ins. Co. of Newark, N.J. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968); *United Services Life Insurance Company v. Delaney,* 396 S.W.2d 855, 861 (Tex. 1965).[3] An advisory opinion results when a court attempts to decide an issue that does not arise from an actual controversy capable of final adjudication. See *Fikes v. Ports,* 373 S.W.2d 806 (Tex.Civ.App.—Fort Worth 1963, writ refused n.r.e.). Cf. *Rice,* 404 U.S. at 246, 92 S.Ct. at 404, 30 L.Ed.2d at 415 ("To be cognizable in a federal court, a suit 'must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (citation omitted)).

In the instant case, the Court of Appeals determined that the State could try appellant for any lesser included offenses of

---

2. Arguably, our original opinion in *Garrett II* is constrained by the doctrine of "the law of the case." See *Ware v. State,* 736 S.W.2d 700 (Tex. Cr.App.1987); *Jordan v. State,* 576 S.W.2d 825 (Tex.Cr.App.1978). In *Garrett I,* we held that the infirm instruction acted to increase the State's burden of proof above what it would have been had the transferred intent instruction been effective. *Garrett I,* supra, at 781. Now that our opinion in *Garrett I* is final, the question of what theory the State must use to prove appellant's guilt may not be relitigated. *Ware,* supra; *Jordan,* supra. In *Garrett I,* we held that the abstract charge on transferred intent served to increase the State's burden of proof. A measure of the sufficiency of the evidence must be against that standard.

As noted in *Garrett II, Garrett I* did not expressly say that the State could not convict appellant on a theory of transferred intent. "Yet while it is true that was not the *holding* of

our opinion, that conclusion nonetheless inevitably follows from what was observed." *Garrett II,* supra at 788. Law of the case doctrine applies as well to implicit holdings as explicit ones. *E.g., Kori Corp. v. Wilco Marsh Buggies & Draglines,* 761 F.2d 649, 657 (Fed.Cir.1985); *Davis v. Sec. of Health & Human Services,* 634 F.Supp. 174, 178 (E.D.Mich.1986); *Span–Deck, Inc. v. Fabcon Inc.,* 570 F.Supp. 81, 87 (D.Minn. 1983); 1B J. Moore, Federal Practice ¶ 0.404[1], n. 15 (1974).

3. In defining the breadth of judicial power under the federal constitution, see U.S. Const. art. III, §§ 1 & 2, the United States Supreme Court has reached the same conclusion. *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) ("Early in its history, this Court held that it had no power to issue advisory opinions....").

murder despite appellant's acquittal for the offense of murder. However, at that point the Court of Appeals did not know if the State would attempt to retry appellant for some lesser included offense. Moreover, without an information or indictment naming a particular offense, the Court of Appeals could not rule with any specificity or certainty. In sum, the Court of Appeals' holding did not resolve an actual controversy capable of final adjudication. It anticipated a controversy and presumed hypothetical facts.

It was not necessary for this Court to address the merits of the Court of Appeals' holding regarding the future prosecution of appellant for lesser included offenses.[4] The Court of Appeals had no power to decide that issue because the issue of double jeopardy could only arise if appellant were subsequently charged with some lesser included offense. See, e.g., *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App. 1982). Therefore, we find that the Court of Appeals' holding was advisory. We express no opinion at this time as to whether appellant could be tried for some lesser included offense.

The State's motion for rehearing is denied.

TEAGUE and WHITE, JJ., concur in result.

ONION, P.J., and DAVIS and McCORMICK, JJ., dissent.

DUNCAN, J., not participating.

---

**4.** We note that this Court has made the same mistake in past cases by addressing the double jeopardy implications of an acquittal prior to the existence of an actual controversy capable of final adjudication. See, e.g., *Taylor v. State*, 637 S.W.2d 929, 934 (Tex.Cr.App.1982); *Granger v. State*, 605 S.W.2d 602, 605 (Tex.Cr.App.1980); *Ex parte Harris*, 600 S.W.2d 791, 792 (Tex.Cr. App.1980); *Rogers v. State*, 575 S.W.2d 555, 559 (Tex.Cr.App.1979); *Moss v. State*, 574 S.W.2d 542, 546 (Tex.Cr.App.1978) (opinion on rehearing).